**In re Michael W. CLARK and Vera L. Clark, Debtors.**

**Michael W. CLARK and Vera L. Clark, Plaintiffs,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**Bankruptcy No. 394–31480 RCM–7. Adv. No. 394–3323.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

June 14, 1995.

LaDonna K. Ockinga, Dallas, TX, for plaintiffs.

Manuel P. Lena, Jr., Atty., Tax Div., U.S. Dept. of Justice, Dallas, TX, for defendant.

## *AMENDED MEMORANDUM OPINION*

ROBERT McGUIRE, Chief Judge.

Pursuant to Bankr.R. 7052, following are the Court's findings of fact and conclusions of law from the hearing on January 3, 1995 and June 9, 1995. The relief prayed for by Plaintiffs is denied.

This is a Chapter 7 proceeding. The facts contained in the Stipulation of Evidence, attached hereto as Exhibit "1", are adopted as findings by the Court.

This is a core proceeding over which the Court has jurisdiction. 28 U.S.C. § 157(b)(2)(I).

Michael W. Clark ("MWC") and Vera L. Clark (collectively "Plaintiffs" or "Debtors") ask the Court to determine that their federal income (1040) tax liability for tax years 1987 and 1988 is not a priority claim of the Internal Revenue Service ("Defendant") and is therefore discharged. Defendant requests the Court to utilize 11 U.S.C. § 105(a) to determine that both the "three year period" and the "240–day period" for determining priority status pursuant to 11 U.S.C. §§ 507(a)(7)(A)(i) and (ii) [1], respectively, were tolled during the time Plaintiffs were protected by the automatic stay of 11 U.S.C. § 362, and for a period of six months after the date the stay was lifted, for each prior bankruptcy filing, pursuant to 26 U.S.C. §§ 6503(b) and (h). Consequently, Defendant requests the Court to hold that Plaintiffs' unpaid federal income (1040) tax liability for tax years 1987 and 1988 is a priority claim of Defendant and is therefore excepted from discharge under 11 U.S.C. § 523.

11 U.S.C. § 523(a)(1)(A) [2] excepts from discharge taxes described in 11 U.S.C. § 507(a)(7). 11 U.S.C. § 507(a)(7)(A)(i) grants the government priority for unpaid income taxes if the due date of the return, including any extensions, is less than three years from the date of filing of the petition in bankruptcy. A government claim for unpaid income taxes is also entitled to priority under 11 U.S.C. § 507(a)(7)(A)(ii) if the taxes at issue were assessed within 240 days of the commencement of the bankruptcy petition.

In this case, it is undisputed that, absent tolling, the 1987 and 1988 taxes were due more than three years and assessed more than 240 days before the March 8, 1994 date of the filing of Plaintiffs' current Chapter 7 petition.

Defendant contends that the Court should use its equity power to toll the statutory time periods in 11 U.S.C. §§ 507(a)(7)(A)(i) and (ii) for the time that Plaintiffs were in each of their four prior bankruptcies, and tack on a period of six months after the date the stay was lifted, for each prior bankruptcy filing, pursuant to 26 U.S.C. §§ 6503(b) and (h). [3]

---

1. Now 11 U.S.C. § 507(a)(8)(A)(i) and (ii), per 1994 amendments. Since § 507(a)(7) was the effective law at the time of this trial, all further references will be to § 507.

2. 11 U.S.C. § 523 provided in relevant part:
    (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
    (1) for a tax or a customs duty—
    (A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed.
    Since the 1994 amendments, the second reference is to § 507(a)(8).

3. Section 6503(b) states:
    The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.
    Section 6503(h) refers to proceedings in bankruptcy; it reads: The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by rea-

In *Solito v. U.S.*, 172 B.R. 837, 839 (W.D.La.1994), the court stated:

There are no sections of the Bankruptcy Code which expressly provide that in the case of successive petitions in bankruptcy the three year period for the IRS to assess and collect accruing tax liabilities imposed by 523(a)(7) or 507(a)(7)(A)(i) might be suspended during the pendency of previous bankruptcy cases. However, 11 U.S.C. § 105(a) grants the Bankruptcy Court the power to "issue any order, process or judgment that is necessary to carry out the provisions" of the Bankruptcy Code and take "any action or make any determination necessary to enforce or implement court orders or rules or to prevent the abuse of process." *See United States v. Energy Resources Company*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990) ("traditional understanding" that Bankruptcy Courts are courts of equity and, under 11 U.S.C. § 105(a), they may "issue any order, process or judgment necessary or appropriate to carry out the provisions" of the Bankruptcy Code).

In *In re Western Real Estate Fund, Inc.*, 922 F.2d 592, 601 (10th Cir.1990), modified on other grounds, *Abel v. West*, 932 F.2d 898 (10th Cir.1991), the Tenth Circuit recognized the "supplementary equitable powers" granted bankruptcy courts under 11 U.S.C. § 105(a) but went on to state such powers "may not be exercised in a manner that is inconsistent with the other, more specific provisions of the Bankruptcy Code."

(Footnotes omitted).

■ In *Matter of Quenzer*, 19 F.3d 163 (5th Cir.1993), the court pointed out that 11 U.S.C. § 108(c) suspends only those limitation periods imposed under non-bankruptcy law and non-bankruptcy proceedings. Thus, § 108(c) does not toll the provisions of §§ 523(a)(1) and 507(a)(7)(A)(i) and (ii).

In *Matter of Quenzer, supra*, the Fifth Circuit refused to consider the government's request, raised on appeal for the first time, to exercise the Bankruptcy Court's equitable tolling powers under 11 U.S.C. § 105(a) to sustain the Bankruptcy and District Courts' conclusion that neither the three-year period provided for in 11 U.S.C. § 507(a)(7)(A)(i), nor the 240–day period provided for in 11 U.S.C. § 507(a)(7)(A)(ii) runs during the pendency of the first of two successive bankruptcies. *Id.* at 165.

Defendant further contends:

While no explicit statutory provisions may require the suspension of the priority periods for the time during which [Plaintiffs] and their assets were protected in the four prior bankruptcy cases, the Court should use its equity power under 11 U.S.C. § 105(a) to implement those provisions of the Code which make certain claims priority.

■ Defendant had the burden of proof factually to show that § 105(a), if available, should be applied to make its claims priority. *Matter of Quenzer, supra*, 19 F.3d 163, 165. The undisputed facts in *Quenzer* showed that the Quenzers filed a Chapter 13 petition in September 1986 which was converted to Chapter 7 and voluntarily dismissed in March 1988. In March 1990, the Quenzers filed a Chapter 7 petition and their discharge was entered in July 1990. At issue were tax deficiencies for 1984 and 1985. While acknowledging previously mentioning such undisputed facts, the Fifth Circuit stated:

■ Equitable considerations are largely fact-driven. "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case." *Full development and examination of the facts and the relative positions of the parties are imperative in the exercise of the court's equitable powers.* Necessarily, "[i]n shaping equity decrees the trial court is vested with broad discretionary power, appellate review is correspondingly narrow." Determining equities in the first instance is seldom fit grist for the appellate mill.

The record before us is devoid of any factual findings by the bankruptcy or district courts which would justify the exer-

son of such case from making the assessment or from collecting and—

(1) for assessment, 60 days thereafter, and
(2) for collection, 6 months thereafter.

cise of equitable powers to extend the time for the government's tax collection efforts.

*Id.* (Emphasis added). (Footnotes deleted).

In this case, Stipulated Fact "e." shows that Debtors had short-lived petitions in 1991 and part of 1992; thus, Debtors were in Chapter 13 for 134 days during July 7 through November 17, 1992, and then 224 days during the period of January 5 through August 16, 1993. Then Debtors were out of bankruptcy for 203 days before filing the last bankruptcy on March 8, 1994. Exhibit "2" hereto accurately shows what happened to the prior bankruptcies, *e.g.*, the first one being dismissed for failure to file a plan; the second one for failing to file a matrix, schedules and statement of financial affairs; the third one for failing to attend a § 341 meeting and make plan payments; and the fourth one for failure to make plan payments. *See,* copy of Defendant's chart attached as Exhibit "2".

During the period of November 4, 1991 through August 16, 1993, Debtors spent twenty-one out of thirty-three months in bankruptcy. MWC was employed the great majority of this time.

By original opinion entered January 23, 1995, this Court found that Defendant failed to meet its burden of proof to show that, under § 105(a), the Court should exercise its equitable powers to extend the time for Defendant's tax collection efforts, finding that Defendant could have attempted to show what, if anything, was collected on the priority debt through the previously-charted dismissed Chapter 13's; what collection efforts, if any, it undertook; how it was thwarted, if it was; when it was close to collection; what Debtors' employment status was during all pertinent times; etc.

Defendant filed a motion to alter or amend judgment, or for new trial, asking the Court for further opportunity to, in effect, reopen the record to address the proof deficiencies mentioned in the prior opinion. Such new trial was granted and additional evidence was taken on June 9, 1995. The additional evidence revealed the following.

In the four prior bankruptcies, Debtors made no payment on their 1987–88 IRS tax debt. With respect to the tax year 1987, the only credits reflected are either withholding tax credits in 1987 or 1988, or a $2,012 credit on February 24, 1992, which was an offset from Debtors' 1040 for 1991 (Exhibit "1"). With respect to the tax year 1988; the only credits are attributable to either withholding tax credit in 1988, or a $4,837.67 credit for April 15, 1988, as an offset from Debtors' 1040 for 1987, which was subsequently eliminated after the 1991 audit (Exhibit "2"). The Debtors' 1987–88 substantial tax liability arose from audit deficiencies for constructive dividends paid to MWC for which taxes were not paid, and which deficiencies were revealed by an IRS audit. Exhibit "12" shows the chronology of IRS notices to the Debtors. Debtors contend their bankruptcies were primarily motivated by attempts to save their home from foreclosure. However, Exhibit 12 shows that, likewise, on four out of five of Debtors' bankruptcies, Debtors also returned back into bankruptcy shortly after receipt of an IRS collection notice or shortly after an IRS collections officer had the case.[4]

MWC became liable for trust fund recovery penalty under 26 U.S.C. § 6672 as a responsible officer of Clark Medical Transcription, Inc. ("Clark Medical"), his father's company, for the tax period ending June 30, 1991, in an amount exceeding $83,000 (Exhibit 3). This tax was assessed on Debtors on January 10, 1994. MWC testified that this was a surprise tax on employees of Clark Medical (for a five-year period) that he and his father had thought were independent contractors. It is credible that this was a surprise. Apparently, this caused Clark Medical to go out of business sometime after June 30, 1991, and MWC's mother committed suicide, allegedly as a result of it. However, in the tax period beginning June 30, 1991, through September 30, 1993, MWC and his father then set up a new company, Medicor Services, Inc. ("Medicor"), and MWC ran up

---

4. Serial, closely spaced, unsuccessful bankruptcy filings, whether to avoid one creditor's foreclosure or the IRS on taxes, can, depending on the facts, constitute bad faith filings. Neither side directly addressed this issue.

for himself, as a responsible party and an officer of Medicor, employment tax liability in the range of $40,962.53 (Exhibits 24 and 30), which was assessed during various periods from September 16, 1991 through April 6, 1995. He consented to this assessment on May 15, 1995 (Exhibit 30).

Debtors filed their 1992 and 1993 tax returns in May 1995, fourteen months after this bankruptcy was filed. It appears that Debtors' 1992 tax return (Exhibit N) failed to report at least $4,600 in wages.

### Conclusions

Debtors have three sons who are minors. Debtors' tax situation is bleak. Debtors main arguments are that the filing of the bankruptcies did not thwart the IRS because there was no money to collect and that the IRS failed to show sufficient diligence to justify the tolling requested. While homestead foreclosure prevention motivated, to some extent, the filing of the four bankruptcies (Debtors' home was foreclosed September 3, 1993), it appears that such bankruptcies were likewise used to shield Debtors from any attempt to meaningfully address, in any bona fide manner whatsoever, their 1987–88 tax liability. It is not credible that MWC had no ability to make any payment whatsoever on their 1987–88 tax liability during the period of their first four bankruptcies. For the most part, MWC was employed during the period of these prior bankruptcies and no payments went to the IRS through such bankruptcies. Further, during bankruptcy, MWC continued to pyramid his personal tax liabilities (*see, for example,* Exhibits 24 and 30, and the 1992 return), either through willfulness, negligence, or cavalier disregard of taxes. Defendant's evidence was sufficient to justify equitable tolling and Plaintiffs' complaint will be denied. Judgment will be entered in accordance with the foregoing opinion. This opinion amends the original opinion filed herein.

### EXHIBIT "1"

Jan. 3, 1995.

### STIPULATION OF EVIDENCE

Comes now MICHAEL W. CLARK and VERA L. CLARK, Plaintiffs by and through their attorney, LaDonna K. Ockinga and the Internal Revenue Service, Defendant by and through their attorney Manual P. Lena, Jr., Attorney Tax Division, U.S. Department of Justice in the above-entitled and numbered cause, and enters into this stipulation of evidence.

It is hereby agreed and stipulated by all parties that credible witnesses would testify and admissible documents would establish, the following facts:

a.  Plaintiff's 1987 income tax return was filed on 10–17–88 and assessed on 8–19–91. The tax return was due on 10–15–88.

b.  Plaintiff's 1988 income tax return was filed on 10–18–89 and assessed on 8–19–91. The tax return was due on 10–15–89.

c.  Plaintiff filed their petition under Chapter 7 on March 8, 1994.

d.  Plaintiff has never filed an offer in compromise.

e.  Bankruptcy periods:

| Case Number | Chapter | Filed | Dismissed | # days stayed | # days to next pet. |
|---|---|---|---|---|---|
| 391–38605 | 13 | 11–04–91 | 12–13–91 | 40 | 113 |
| 392–33236 | 7 | 04–06–92 | 04–23–92 | 18 | 74 |
| 392–36178 | 13 | 07–07–92 | 11–17–92 | 134 | 48 |
| 393–30218 | 13 | 01–05–93 | 08–16–93 | 224 | 203 |
| 394–31480 | 7 | 03–08–94 | Discharged 7–13–94 | | |

f. Time period running from date of assessment to first filed bankruptcy was 77 days.

g. Total time after assessment and not in bankruptcy equals 515 days.

h. No tax lien has been filed on either tax year.

/s/ LaDonna K. Ockinga
LADONNA K. OCKINGA,
Attorney for Plaintiffs

/s/ Manuel P. Lena, Jr.
MANUEL P. LENA, JR.,
Attorney for Defendant

## EXHIBIT "2"
### DEBTORS' BANKRUPTCY FILINGS & CASE DISPOSITION

| Serial Bankruptcies | Petition Date | Case Dismissed | # Days in Stay | # Days Prior to Next Petition |
|---|---|---|---|---|
| Chapter 13 91–38605 | 11/04/91 | 12/13/91 [A] | 40 | 113 |
| Chapter 7 · NA 92–33236 | 04/06/92 | 04/23/92 [B] | 18 | 74 |
| Chapter 13 92–36178 | 07/07/92 | 11/17/92 [C] | 134 | 48 |
| Chapter 13 93–30218 | 01/05/93 | 08/16/93 [D] | 224 | 203 |
| Chapter 7 94–31480 | 03/08/94 | | | |

A = Debtors failed to file plan.
B = Debtors failed to file mailing matrix, schedules, & statement of financial affairs.
C = Debtors failed to attend 341 meeting and failed to make plan payments.
D = Debtors in material default for failing to make plan payments.

---

### FINAL JUDGMENT

For the reasons contained in the Amended Memorandum Opinion signed this date,

It is **ORDERED** that the unpaid federal income tax liability of Debtors Michael W. Clark and Vera L. Clark to the Internal Revenue Service, for the years 1987 and 1988, is not discharged by the Order of Discharge entered in Case No. 394–31480 RCM–7.