**In re Albert L. GILMORE, Jr. and Sharon L. Gilmore, Debtors.**

**Bankruptcy No. 92–60884.**

United States Bankruptcy Court,
E.D. Texas,
Tyler Division.

Feb. 29, 1996.

Order Granting in Part and Denying in Part Motion to Reconsider
April 16, 1996.

Charles Lauffer, Tyler, TX, for Debtors.

Waymon G. DuBose, Jr., Department of Justice, Tax Div., Dallas, TX, for Internal Revenue Service.

## ORDER GRANTING MOTION FOR ENFORCEMENT OF INJUNCTION OF DISCHARGE OF DEBTOR

HOUSTON ABEL, Chief Judge.

Before the Court is a Motion For Enforcement Of Injunction Of Discharge Of Debtor ("Motion") filed by the Debtors. The Debtors assert that their 1040 taxes due for tax years 1985 through 1988 ("Taxes") were discharged since the Taxes were due more than three years and assessed more than 240 days prior to the filing of the petition for relief under Chapter 7. *See* 11 U.S.C. § 507(a)(8)(A). Because the Internal Revenue Service ("IRS") is now attempting to collect the Taxes, the Debtors contend that the IRS has violated the discharge injunction under 11 U.S.C. § 524(a). The IRS answered by asserting that the three year limitation under § 507(a)(8)(A)(i) was equitably tolled pursuant to 11 U.S.C. § 105(a), and thus the Taxes were not discharged.

Based on a review of the file, the evidence admitted and arguments of counsel at the hearing on the Motion, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052. Where appropriate, findings of fact shall be deemed conclusions of law and conclusions of law shall be deemed findings of fact.

### JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (I).

### STIPULATION OF FACTS[1]

1. The Debtors' federal income tax return for tax year 1985 was due under extension on October 15, 1986, and the Debtors filed their joint return on October 15, 1986.

1. These are facts stipulated to by the Debtors and the IRS.

2. On November 24, 1986, the IRS made assessments against the Debtors for their joint liability for unpaid federal income taxes for tax year 1985. The IRS assessed the Debtors $16,208.00 in tax, $901.00 in penalties, and $949.22 in interest.

3. The Debtors' federal income tax return for tax year 1986 was due under extension on July 7, 1987, but the Debtors did not file their joint return until August 8, 1988.

4. On September 5, 1988, the IRS made assessment against the Debtors for their joint liability for unpaid federal income taxes for tax year 1986. The IRS assessed the Debtors $6,994.00 in tax, $2,204.73 in penalties, and $1,110.99 in interest.

5. The Debtors' federal income tax return for tax year 1987 was due on April 15, 1988, but the Debtors did not file their joint return until August 8, 1988.

6. On September 5, 1988, the IRS made assessments against the Debtors for their joint liability for unpaid federal income taxes for tax year 1987. The IRS assessed the Debtors $13,268.00 in tax, $3,178.34 in penalties, and $622.97 in interest.

7. On April 14, 1989, the Debtors filed a petition for relief under Chapter 13 of Title 11, Case No. 89–60799, in the Eastern District of Texas, Tyler Division.

8. The Debtors' federal income tax return for tax year 1988 was due under extension on August 15, 1989, and the Debtors filed their joint return on July 7, 1989.

9. On July 3, 1989, the IRS timely filed an original proof of claim dated June 29, 1989, in the aggregate amount of $106,167.78, consisting of a secured claim in the amount of $30,890.98, an unsecured priority claim in the amount of $65,329.67, and an unsecured general claim in the amount of $9,947.13, in the Debtors' Chapter 13 bankruptcy.

10. On September 5, 1989, the Debtors filed a First Amended Plan of Reorganization in their Chapter 13 bankruptcy.

11. On September 27, 1989, an order was entered confirming the Debtors' First Amended Plan of Reorganization.

12. The IRS was the largest creditor in the Debtors' Chapter 13 bankruptcy.

13. Total amount of $32,949.27 was paid to the IRS during the Debtors' Chapter 13 bankruptcy.

14. The $32,949.27 paid to the IRS during the Debtors' Chapter 13 bankruptcy was applied to the following tax years in the following amounts:

| Tax Year | Amount Applied |
|---|---|
| 1982 | $15,457.87 |
| 1983 | $11,059.54 |
| 1984 | $ 6,431.86 |

15. On August 16, 1991, the IRS filed a first amended proof of claim dated August 10, 1991, in the aggregate amount of $104,-610.78, consisting of a secured claim in the amount of $30,890.98, an unsecured priority claim in the amount of $63,772.67 (to reflect the filing of the Debtors' 1988 joint income tax return), and an unsecured general claim in the amount of $9,947.13, in the Debtors' Chapter 13 bankruptcy.

16. On April 1, 1992, the Debtors filed a Motion to Dismiss their Chapter 13 bankruptcy.

17. On April 20, 1992, an order was entered granting the Debtors' Motion to Dismiss their Chapter 13 bankruptcy.

18. On July 6, 1992, the IRS made assessment against the Debtors for their joint liability for unpaid federal income taxes for tax year 1988. The IRS assessed the Debtors $12,443.00 in tax, $3,222.38 in penalties, and $5,020.49 in interest.

19. On October 1, 1992, an order was entered closing the Debtors' Chapter 13 bankruptcy.

20. The automatic stay was in effect in the Debtors' Chapter 13 bankruptcy for 1,276 days.

21. On December 8, 1992, the Debtors filed a petition for relief under Chapter 7 of Title 11, Case No. 92–60884, in the Eastern District of Texas, Tyler Division.

22. The Debtors' Chapter 7 bankruptcy was a no asset case.

23. The IRS did not file a proof of claim in the Debtors' Chapter 7 bankruptcy.

24. The IRS was the largest creditor in the Debtors' Chapter 7 bankruptcy.

25. On March 26, 1993, an order was entered discharging the Debtors from their dischargeable debts.

26. The automatic stay was in effect in the Debtors' Chapter 7 bankruptcy for 107 days.

27. From April 20, 1992 (date the order was entered granting the Debtors' Motion to Dismiss their Chapter 13 bankruptcy) to December 8, 1992 (date the Debtors filed the Chapter 7 bankruptcy) is 232 days.

28. From October 15, 1986 (due date of the Debtors' 1985 income tax return) to April 14, 1989 (date the Debtors filed the Chapter 13 bankruptcy) is 910 days.

29. From April 15, 1987 (date of the Debtors' 1986 income tax return) to April 14, 1989 (date the Debtors filed the Chapter 13 bankruptcy) is 730 days.

30. From April 15, 1988 (due date of the Debtors' 1987 income tax return) to April 14, 1989 (date the Debtors filed the Chapter 13 bankruptcy) is 363 days.

31. The Debtors filed their Chapter 13 bankruptcy on April 14, 1989, which is before their 1988 income tax return was due under extension on August 15, 1989.

32. Debtor Albert L. Gilmore, Jr.'s federal income tax return for tax year 1993 was due under extension on October 15, 1994, but his single return was not received by the IRS until October 17, 1994.

33. As of September 25, 1995, the outstanding balance due on Debtor Albert L. Gilmore, Jr.'s 1993 federal income tax liability is $2,083.38

34. Debtor Albert L. Gilmore, Jr.'s federal income tax return for tax year 1994 was due under extension on October 15, 1995.

*FINDINGS OF THE COURT*

35. The IRS was listed in the Debtors' schedules and received notice of their Chapter 7 bankruptcy.

36. On March 26, 1993, an order was entered closing the Debtors' Chapter 7 bankruptcy.

37. Notices of intent to levy dated December 19, 1994, were sent to the Debtors by the IRS for the unpaid Taxes.

38. A letter dated December 27, 1994, was mailed to the IRS by the Debtors' attorney, Charles Lauffer ("Lauffer"), stating that the Taxes were discharged and that the notices of intent to levy violated the discharge injunction imposed under § 524(a).

39. A final notice of intent to levy dated January 9, 1995, was mailed to the Debtors by the IRS.

40. A letter dated February 14, 1995, was mailed to the IRS by Lauffer that once again stated that the Taxes were discharged and informing the IRS that the Debtors intended to sue the IRS if the IRS does not discontinue efforts to collect the Taxes. Lauffer mailed two additional letters to the IRS dated April 12, 1995 and April 26, 1995, which also demanded that the IRS cease efforts to collect the Taxes.

41. Notices of levy dated May 16, 1995, were served on the Debtors' employers, Community Credit Union and Tyler Junior College, by the IRS.

42. A letter dated May 30, 1995, was mailed by Lauffer to the IRS informing the IRS that the Debtors have "no choice" but to file suit against the IRS for violating the discharge injunction.

43. On June 14, 1995, the Debtors filed the Motion seeking the enforcement of the discharge injunction and the recovery of damages.

44. On August 4, 1995, the IRS filed its response to the Motion which merely asserts that the Motion should be denied.

45. The IRS has never filed a pleading that affirmatively requests that the Court use its equitable powers under § 105(a) to toll the three year limitation under § 507(a)(8)(A)(i) during the pendency of the Debtors' Chapter 7 bankruptcy.

*CONCLUSIONS OF LAW*

It is undisputed that the Taxes were due more than three years and assessed more than 240 days before the filing of the Chapter 7 bankruptcy. The Court's inquiry, how-

ever, does not end with that fact. This Court has followed the majority of courts that have held that under the appropriate fact scenario a court can use its equitable powers under § 105(a)[2] to toll the three year limitation under § 507(a)(8)(A)(i). *See generally In re Richards,* 994 F.2d 763, 765 (10th Cir.1993); *Collins v. United States,* No. H–92–2221 (S.D.Tex. Oct. 6, 1994); *In re Clark,* 184 B.R. 728 (Bankr.N.D.Tex.1995); *In re Leraas,* No. 94–40724 (Bankr.E.D.Tex. June 7, 1995); *In re Ramos,* No. 94–50359–K–13 (Bankr. W.D.Tex. Dec. 29, 1994); *In re Walton,* No. 493–41516–MT–13 (Bankr.N.D.Tex. March 18, 1994). Thus, if the Court should find the facts warrant the tolling of the three year limitation during the pendency of the Debtors' Chapter 7 bankruptcy, the Taxes will not be discharged. Otherwise, the Taxes have been discharged. *See In re Quenzer,* 19 F.3d 163, 165 (5th Cir.1993) (Fifth Circuit held that 11 U.S.C. § 108(c) does not toll the provisions of § 507(a)(8)(A)(i)).

■ Despite the fact that the Taxes are clearly dischargeable absent the application of equitable tolling, at no time has the IRS filed a pleading that affirmatively requests that the Court use its § 105(a) equitable powers. Instead, the IRS has required the Debtors to reopen this case and seek a relief that on its face they are entitled to under the Bankruptcy Code. The burden was on the IRS to factually show that § 105(a) should be used to equitably toll the three year limitation under § 507(a)(8)(A)(i). *Clark,* 184 B.R. at 730. There is no valid excuse for the IRS' failure to obtain a ruling from the Court regarding whether equitable tolling was warranted before it attempted to collect the Taxes.

■ Further, the Court will not use its equitable powers to help a party who has acted in a manner contrary to the principles of equity. *See In re Grimes,* 147 B.R. 307, 316 (Bankr.E.D.N.Y.1992) ("fundamental tenet [for the use of equitable powers is] that one who seeks equity must do equity"). Equitable tolling is not a right but a potential remedy that can be granted after consideration of the facts and the relative positions of the parties. *Quenzer,* 19 F.3d at 165. By attempting to collect the Taxes without first seeking and obtaining a ruling from the Court that the three year limitation should be equitably tolled, the IRS has simply presumed that equitable tolling was warranted in this case.[3] The IRS failed to properly raise the issue of equitable tolling with the Court even though the Debtors repeatedly advised the IRS that they believed the Taxes were discharged. Because the IRS *sua sponte* decided that equitable tolling was warranted in this case which thereby forced the Debtors to bring this matter before the Court, the IRS has "unclean hands". If the IRS believed that equitable tolling was warranted, the IRS should have filed a dischargeability proceeding under 11 U.S.C. § 523(a)(1) requesting that the Taxes be determined nondischargeable under the theory of equitable tolling. *See* FED.R.BANKR.P. 7001(6) & (7). The Court does not look kindly upon a party who asserts an equitable remedy not previously granted to the party by the Court. As the Ninth Circuit has noted, "[t]he principle which underlies all equity rulings is embodied in the maxim 'vigilantibus non dormientibus aequitas subvenit,' that is, equity aids the vigilant, not those who slumber on their rights." *Esta Later Charters, Inc. v. Ignacio,* 875 F.2d 234, 239 n. 11 (9th Cir.1989). The arrogant conduct by the IRS in this case cannot be condoned by the Court.

Accordingly, the Court concludes that the IRS has never properly requested the Court to equitably toll the three year limitation

---

**2.** Section 105(a) grants the Court the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title" and to take "any action or … [make] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."

**3.** The Court notes that the IRS typically requests for the application of equitable tolling when

there have been several bankruptcies filed by a debtor. However, in the case *sub judice,* the Debtors only have one prior bankruptcy. The fact that the Debtors have filed two bankruptcies does not establish as a matter of law that equitable tolling is warranted. The existence of prior bankruptcies is merely a factor to be considered by the Court.

under § 507(a)(8)(A)(i) in this case. However, even if the IRS did make a proper request, the Court declines to use its equitable powers to toll the three year limitation because of the conduct by the IRS. THEREFORE,

IT IS ORDERED that the Motion is GRANTED; FURTHER,

IT IS ORDERED that the IRS shall take no further action to collect the Taxes; FURTHER,

IT IS ORDERED that any other requested relief not specifically granted herein is DENIED.

IT IS SO ORDERED, ADJUDGED AND DECREED.

### ORDER GRANTING IN PART AND DENYING IN PART MOTION TO RECONSIDER

Before the Court is a Motion To Reconsider ("Motion") filed by the Internal Revenue Service ("IRS") on March 11, 1996. The IRS requests that the Court reconsider the Order Granting Motion For Enforcement Of Injunction Of Discharge Of Debtor entered on February 29, 1996. In its verbose Motion, the IRS reasserts its argument that the Debtors' 1985 through 1988 1040 taxes ("Taxes") were never discharged because the three year time limitation in 11 U.S.C. § 507(a)(8)(A)(i) was equitably tolled pursuant to 11 U.S.C. § 105(a). Additionally, the IRS asserts for the first time that the Debtors' 1988 tax liability was not discharged because the 1988 tax liability was assessed within 240 days before the date the Chapter 7 petition was filed. *See* 11 U.S.C. § 507(a)(8)(A)(ii). After reviewing the Motion, the Court is of the opinion that the Motion should be granted in part and denied in part.

A. *1985 Through 1987 Taxes* [1]

First, the Court once again rejects the IRS' assertion that it was the Debtors' burden to seek and to prove the dischargeability of the Taxes. Why should a debtor be required to initiate a post-discharge dischargeability proceeding if the plain language of the Bankruptcy Code clearly states that the debt is discharged! It would be ludicrous to require a debtor to seek a determination of something the plain language of the Bankruptcy Code has granted. Because the only means to prevent the 1985 through 1987 taxes from being discharged is if the Court uses its equitable powers under § 105(a) to contravene the plain language of the Bankruptcy Code, it is the IRS that should bear the burden regarding this matter. It is the IRS that needs the equitable relief, not the Debtors.

Secondly, the IRS has been on notice since the Fifth Circuit's 1993 holding in *Quenzer* that a bankruptcy court's use of its equitable powers provides the only *potential* means for otherwise dischargeable taxes to be held nondischargeable. *In re Quenzer*, 19 F.3d 163, 165 (5th Cir.1993) (Fifth Circuit declined to address the issue of whether a bankruptcy court may use § 105(a) to toll the three year limitation in § 507(a)((8)(A)(i)). Despite knowledge of this very important and significant decision, the IRS failed in the case *sub judice* to initiate any action in this Court seeking a determination of the dischargeability of the Taxes under the equitable tolling theory. Rather than seek a determination of the dischargeability of the Taxes, the IRS simply assumed that it was entitled to equitable tolling and proceeded to collect the Taxes. It was this assumption by the IRS which caused the Court to characterize the IRS' conduct as "arrogant". Further, the fact that the IRS has a large number of bankruptcy cases to monitor is not an excuse for the IRS' failure to first seek a determination of the dischargeability of the Taxes.[2] Although the Court is sympathetic to the IRS' burdens and agrees that this is a factor to be considered if the IRS has acted in good faith, this burden on the IRS does not give the IRS the right to grant itself the relief of

---

1. Because the IRS in the Motion has raised an issue regarding the 1988 tax liability that it did not assert at the hearing on the Debtors' motion, the Court will discuss the dischargeability of the 1988 tax separately.

2. The IRS in its pleadings asserted that it is entitled to equitable tolling because the IRS has a large number of bankruptcy cases to monitor.

equitable tolling. It is clear based upon the evidence that the IRS knew that the Debtors were asserting that the Taxes were discharged. Therefore, the IRS should have suspended its collection efforts and sought a *judicial* determination whether equitable tolling was warranted.

▇▇▇ Thirdly, contrary to the assertion by the IRS, the Court's holding in the case at bar is not inconsistent with the cases cited by the IRS wherein equitable tolling was applied. As noted in *Quenzer,* the application of equitable tolling is fact-driven. *Quenzer,* 19 F.3d at 165. Thus, whether a court should use its equitable powers must be based on the facts of that particular case. The Court rejects the IRS' apparent attempt to create a rule that equitable tolling is warranted in all cases in which there is a prior bankruptcy. The fact that a debtor previously filed bankruptcy is only one factor to be considered when deciding whether equitable tolling is warranted. However, the inability of the IRS to pursue a claim because of a prior bankruptcy is not the determinative factor as the IRS essentially asserts. In none of the cases relied upon by the IRS did the courts conclude that equitable tolling was an automatic right the IRS had when there was a prior bankruptcy. Moreover, it is unclear from the cases cited whether the IRS simply granted itself equitable relief as it did in the case *sub judice.* Because the Court agrees that equitable tolling may be used in appropriate cases, the Court's ruling is not in conflict with the holding in the cases cited by the IRS. Accordingly, the IRS over dramatizes the effect of the Court's holding when it states that the holding disregards "Congressional intent and the reasoning of *Richards*".[3] The fact that courts in other cases have used their equitable powers to toll the time limitation based on the facts of the respective case does not automatically entitled the IRS to equitable tolling in all cases.

▇▇▇ Fourthly, the Court reaffirms its finding that the IRS never properly requested this Court to equitably toll the three year time limitation. Contrary to the assertion by the IRS in the Motion, the IRS' Response to the Debtors' Motion for Enforcement of Injunction of Discharge of Debtor did not affirmatively request the Court to equitably toll the time limitation in § 507(a)(8)(A)(i). The response merely cited two cases which did not prohibit the application of equitably tolling. Citation to cases does not translate to an affirmative request that the Court should use its equitable powers. Further, the IRS' failure to affirmatively request equitable relief is best demonstrated in its prayer contained within the response wherein the IRS just asks that the Debtors' "Motion be dismissed with prejudice or denied, and for general relief." Nowhere in the prayer did the IRS affirmatively request that the Court use its equitable powers and hold that the Taxes were not discharged.[4]

Therefore, the IRS has failed to persuade the Court to reconsider its decision to not use the Court's equitable powers to prevent the discharge of the 1985–1987 taxes.

## B. *1988 Taxes*

▇▇▇ In the Motion, the IRS raised for the first time that the 1988 tax liability was not discharged because the 1988 tax liability was assessed within 240 days before the Chapter 7 petition was filed. *See* 11 U.S.C. § 507(a)(8)(A)(ii). Based on the stipulated facts, the 1988 tax liability was assessed on July 6, 1992, and the Chapter 7 petition was filed on December 8, 1992. Accordingly, the 1988 tax was assessed 155 days before the petition was filed. Although the IRS failed to raise this fact at the hearing on the Debtors' motion, the Court is of the opinion that the IRS' silence is not fatal. This dispute was decided on stipulated facts and there was no stipulation between the parties regarding the application of § 507(a)(8)(A)(ii). Because it is undisputed that the 1988 tax was assessed within 240 days before the petition was filed, the 1988 tax liability was not discharged. THEREFORE,

---

**3.** *In re Richards,* 994 F.2d 763 (10th Cir.1993).

**4.** Although it is true that the Trial Memorandum filed by the IRS did discuss the application of § 105(a), a Trial Memorandum is not a pleading from which the Court grants relief.

IT IS ORDERED that the Motion is DENIED as it relates to the Debtors' 1985 through 1987 1040 taxes; FURTHER,

IT IS ORDERED that the Motion is GRANTED as it relates to the Debtors' 1988 1040 tax.

IT IS SO ORDERED, ADJUDGED AND DECREED.