**In re John W. MILLER and Helga E. Miller.**

**John W. MILLER and Helga E. Miller**

**v.**

**INTERNAL REVENUE SERVICE.**

**Bankruptcy No. 95–41291–H4–7.**
**Adversary No. 95–4228.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Aug. 28, 1996.

of trade issue alone.

Bernard Brooks, Stafford, Texas, for Debtors.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WILLIAM R. GREENDYKE, Bankruptcy Judge.

On April 3, 1995 Debtors, John and Helga Miller, filed the instant adversary proceeding seeking a determination that their 1986 and 1989 income taxes are not entitled to priority status, and consequently, are dischargeable pursuant to 11 U.S.C. § 507(a)(8) and § 523(a)(1). Subsequently, on July 12, 1995 Defendant, Internal Revenue Service, filed a motion for summary judgment, which is currently pending before the Court. The motion for summary judgment seeks a determination that the Plaintiff's 1986 income taxes are entitled to priority, and therefore, are non-dischargeable pursuant to 11 U.S.C. § 507(a)(8) and § 523(a)(1).[1]

Upon consideration of the Defendant's motion for summary judgment, the Court has concluded that such motion should be **GRANTED.** Hence, Plaintiff's 1986 income taxes are entitled to priority pursuant to 11 U.S.C. § 507(a)(8) and therefore, are non-dischargeable pursuant to 11 U.S.C. § 523(a)(1).

### I. Factual Background

On August 27, 1992 Plaintiffs filed a case under Chapter 7 of the United States Bankruptcy Code (the "First Bankruptcy"). Subsequently, on November 4, 1992 Plaintiffs' bankruptcy was converted to a case under Chapter 13. Prior to the First Bankruptcy, the Internal Revenue Service held a secured claim in the amount of $15,831.25 for Plaintiffs' unpaid 1986 income taxes.

Prior to Plaintiffs' filing of their First Bankruptcy, the I.R.S. assessed the 1986 taxes on May 11, 1992. Such assessment occurred 179 days before Plaintiffs filed their First Bankruptcy. The case was later converted to a case under chapter 13, and before Plaintiffs completed their plan, their Chapter 13 case was dismissed, by order entered on December 1, 1994. Accordingly, the Plaintiffs never received a discharge for their 1986 tax liability.

During the period that the Plaintiffs were in their First Bankruptcy, the automatic stay imposed by § 362 remained in effect for a total of 754 days. Furthermore, pursuant to

---

1. The parties have stipulated that Plaintiff's have paid their 1989 taxes in full. Therefore, the priority and dischargeability issues regarding such taxes as alleged in the Plaintiff's complaint are moot. As a result, this opinion will focus only on the priority and dischargeability of Plaintiff's 1986 income taxes.

§ 6503 of the Internal Revenue Code, the statute of limitations on collection was suspended for 754 days, plus six months after Plaintiff's First Bankruptcy was dismissed. During the First Bankruptcy, the secured claim of the IRS totalled $25,850.82; however, the Plaintiffs paid $7,032.85 in tax and $2,538.90 in interest while the First Bankruptcy was pending.

On February 21, 1995 Plaintiffs filed their second bankruptcy under Chapter 7 of the code, which is currently pending before the Court (the "Second Bankruptcy"). This was eighty-one days after dismissal of their First Bankruptcy and only fifteen days after the IRS had issued a notice of intent to levy.

## II. *Analysis*

Pursuant to 11 U.S.C. § 507(a)(8)(A), a tax liability may be extended priority status if the tax liability was incurred before the petition was filed and the due date for that tax return (including extensions) was after three years before the bankruptcy petition was filed; or the tax liability was assessed any time within 240 days before the petition was filed. *See*, 11 U.S.C. § 507(a)(8)(A)(i)–(ii).[2] During such periods, a taxpayer may not file bankruptcy without according priority status to such tax claims. Furthermore, section 523(a) declares that priority taxes in § 507(a)(8) are excepted from discharge. 11 U.S.C. § 523(a)(1)(A).

Problems arise, however, when a debtor files successive petitions and, at such later proceedings, the previous priority tax claims no longer meet the three-year or 240 day priority requirements of 11 U.S.C. § 507(a)(8)(A). There are no sections of the Bankruptcy Code which expressly provide that in the case of successive petitions in bankruptcy, the priority periods for the I.R.S. to assess and collect accruing tax liabilities imposed by § 523(a)(1) and § 507(a)(8)(A) may be suspended during the pendency of a previous bankruptcy case. However, courts have dealt with this "loophole" by tolling the priority period by utilizing 11 U.S.C. § 105(a) or § 108(c).

 Section 105(a) arguably allows the priority tax period to be equitably tolled, in exercise of the Court's authority to enter any necessary or appropriate orders to carry out the provisions of the bankruptcy code. *See*, 11 U.S.C. § 105(a).[3] On the other hand, section 108(c) suspends those limitation periods imposed under *non-bankruptcy* law or by order entered in a non-bankruptcy proceeding. *See*, 11 U.S.C. § 108(c).[4]

The Fifth Circuit has held in *In re Quenzer* that section 108(c) suspends only those

---

2. Section 507(a)(8)(A) accords priority status to "... allowed unsecured claims of governmental units, only to the extent that such claims are for—

> (A) a tax on or measured by income or gross receipts—
>> (i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;
>> (ii) assessed within 240 days, plus any time plus 30 days during which an offer in compromise with respect to such tax that was made within 240 days after such assessment was pending, before the date of the filing of the petition; or
>> (iii) other than a tax of a kind specified in section 523(a)(1)(B) or 523(a)(1)(C) of this title, not assessed before, but assessable, under applicable law or by agreement, after, the commencement of the case;"

*See*, 11 U.S.C. § 507(a)(8)(A) (1978).

3. Section 105(a) provides "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a) (1978).

4. Section 108(c) states that "... if applicable nonbankruptcy law, an order entered in a non-bankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of ... the end of such period, including any suspension of such period occurring on or after the commence of the case; or ... 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim. 11 U.S.C. § 108(c)(1)–(2) (1978).

limitation periods imposed under *non-bankruptcy* law or non-bankruptcy proceedings and could not be used, upon a debtor's filing of successive bankruptcy petitions, to toll priority periods for collection of taxes during a prior chapter 7 bankruptcy proceeding. *In re Quenzer*, 19 F.3d 163 (5th Cir.1993). The Court, however, did not look at the equitable tolling power under section 105(a) because it was not argued by the parties involved, but raised only on appeal. Therefore, the taxpayer in *Quenzer* was able to discharge the debt since it was no longer given priority status. *Id.*

Following *Quenzer*, the Bankruptcy Court in *In re Clark* utilized its equitable powers under section 105(a) to determine that both the "three year period" and the "240 day period" for determining priority status may be tolled during the time the debtors were protected by the automatic stay and for a period of six months after the date the stay was lifted for each prior bankruptcy filing, pursuant to 26 U.S.C. § 6503(b) and (h). *In re Clark*, 184 B.R. 728 (N.D.Tex.1995). In *Clark*, the Court determined that the debtors' four bankruptcies served to shield them from any meaningful attempt by the I.R.S. to enforce debtors' 1987 and 1988 tax liability. Moreover, although the debtors were employed during the relevant period, the Court noted that no payments were made to the I.R.S.; and consequently, found Debtors' argument of inability to pay to be less than credible. *Id.*

In the instant case, the IRS assessed Plaintiffs' 1986 tax liability within 240 days before they filed their First Bankruptcy. After the First Bankruptcy was dismissed on December 1, 1994, they re-filed again only fifteen days after the IRS issued a notice of intent to levy. Although Plaintiffs' did make payment to the IRS towards their 1986 tax liability during their First Bankruptcy, it appears that the Second Bankruptcy was filed to thwart the IRS' notice of intent to levy; and consequently, to shield themselves from any meaningful attempt to address their 1986 tax liability via the protection of the automatic stay. When Plaintiff filed his 1986 tax return, he only reported tax due of $5,919.00. In addition, he made no estimated tax payments during 1986; but included a check with his return in the amount of $1,000, which was subsequently returned for insufficient funds.[5] The facts justify equitable tolling in this case.

Although the bankruptcy code was enacted to provide debtors with certain protections in order to obtain a "fresh start," it was not promulgated as a means to thwart creditors, such as the IRS, by the filing of successive petitions. In particular, the bankruptcy code was not designed to allow debtors to create a scheme of bypassing the code's non-dischargeability provisions by filing a petition, letting the priority period expire, dismiss their case, and re-file again (in order to discharge the taxes), thereby making themselves unreachable by the IRS. The sole purpose of assigning priority status to certain tax claims is to enhance the government's ability to collect such claim. *See, West v. United States (In re West)*, 5 F.3d 423 (9th Cir.1993).

Pursuant to *In re Clark, supra*, and 11 U.S.C. § 105(a), I conclude it is within my equity jurisdiction to toll the 240 day priority period during the time Debtors were protected by the automatic stay during their First Bankruptcy and for a period of six months thereafter. Consequently, I conclude that priority status exists for the Debtors' 1986 tax liability because the 240 priority period had not accumulated before Debtors filed their present case.

Based upon the foregoing findings and conclusions, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment shall be **GRANTED** by separate form of order entered this day; and it is further

**ORDERED** that the Clerk's Office provide notice of this opinion to all parties to this adversary proceeding.

---

5. Although Plaintiffs have paid their 1989 taxes in full, the collection efforts undertaken by the IRS towards their 1989 tax liability further demonstrates the failure to meaningfully address their tax obligations.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Came on for consideration the Motion for Summary Judgment filed by Defendant, Internal Revenue Service, in the above-referenced adversary. Upon consideration of the Motion, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment (Docket # 5) is **GRANTED**; and it is further

**ORDERED** that the Clerk's Office provide notice of this Order to all parties to this adversary proceeding.