**In re Michael/Juanita DODD, Debtors.**

**Fulton County Dept. of Human Services, Plaintiff,**

**v.**

**Juanita Dodd, Defendant.**

**No. 99–3262.**

United States Bankruptcy Court, N.D. Ohio.

Nov. 5, 2001.

Mark L. Powers, Wauseon, OH, for plaintiff.

Thomas S. Douglas, Cleveland, OH, for defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

On the basis of fraud and misrepresentation, the Plaintiff seeks to have an obligation owed to it by the Debtors held nondischargeable. The statutory authority upon which the Plaintiff relies to have the Defendant's obligation held nondischargeable is § 523(a)(2) which generally provides that a discharge is not available for any debt to the extent that the debt was obtained by a false pretense, a false representation or actual fraud. The events which gave rise to the obligation underlying the Plaintiff's complaint were explained to the Court as follows:

The Defendant was the beneficiary of certain welfare benefits from the Plaintiff. With respect to these benefits, however, the Defendant failed to disclose, when there was a duty to do so, certain information. In specific terms, the Defendant, while her husband, Michael Dodd, was receiving workers' compensation benefits, denied the receipt of such compensation. In addition, the Defendant did not disclose certain changes in Michael Dodd's income. As a result of these transgressions, the Defendant, after pleading guilty to a charge of grand theft, was sentenced to one year in prison (suspended) and ordered to pay Eighteen Thousand Eighty-four and 59/100 dollars ($18,084.59) in restitution. (Plaintiff's Pre–Trial Memoranda at pg. 2).

On September 9, 1999, the Defendant and her husband, Michael Dodd, filed a voluntary petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. Thereafter, the Plaintiff timely commenced the instant adversary proceeding praying that the Eighteen Thousand Eighty-four and 59/100 dollars ($18,084.59) that the Defendant was ordered to pay as restitution be determined to be a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(2). On the Plaintiff's compliance with the requirements of this section, the Court originally scheduled a Trial on the matter. However, prior to

the time of the Trial, the Parties, by and through their legal counsel, requested that the matter be submitted to the Court by Stipulations with accompanying arguments in support. After granting this request, the Parties submitted to the Court a document entitled "Stipulation of all Facts and Respective Parties' Positions Based on Said Facts." The stipulated facts contained therein provided that:

On December 16, 1992, the Debtor, Michael Dodd, suffered a work-related injury while at work.

The Debtor Michael Dodd received medical treatment for said injury at Toledo Hospital and from Dr. Lawrence Spetka, and other treating individuals/entities (primary care providers) totaling $10,358.94.

The Toledo Hospital records, beginning with Michael Dodd's emergency room visit on December 17, 1992, confirmed that the injury was work-related and that the payor would be Ohio Bureau of Workers' Compensation.

The Debtor, Michael Dodd, submitted an application for payment of compensation and medical benefits to the Ohio Bureau of Workers' compensation regarding said injury.

Michael Dodd's claim was subsequently allowed for L4–5 disc herniation with L5—radiculopathy and a claim number was assigned thereto.

The primary care providers only submitted billings to the Plaintiff, the Fulton County Department of Human Services, who paid the providers $10,358.94.

The Ohio Bureau of Workers' Compensation Act provides that all treatment of allowed industrial injuries is to be paid-in-full by the Bureau of Workers' Compensation.

Neither the Toledo Hospital nor the other medical providers who treated Michael Dodd ever billed the Ohio Bureau of Workers' Compensation.

The Ohio Administrative Code provides that all bills for treatment of allowed industrial injuries must be submitted either within two (2) years of the date of service or within six (6) months from the date of mailing of a Final Order allowing the claim, or be forever barred (O.A.C. 4121–3–23).

Under O.A.C. § 4123–3–23, payment of bills can be made retroactively, but only if they have been timely submitted.

Pursuant to rules/regulations of the Bureau of Workers' Compensation, only the primary care providers can submit billing(s) to Workers' Compensation for payment; the individual receiving the "treatment" (in this case Michael Dodd) can not.

With respect to the foregoing facts, the Parties agreed that, on the basis of the exception to discharge contained in § 523(a)(2), the sum of Seven Thousand Seven Hundred Twenty-five and 65/100 dollars ($7,725.65) should be excepted from discharge. The Defendant, however, argues that the Ten Thousand Three Hundred Fifty-eight and 94/100 dollars ($10,-358.94) paid by the Plaintiff to the medical care providers of Michael Dodd should be found to be dischargeable on the basis that if the Ohio Bureau of Workers' Compensation had been properly billed, they, instead of the Plaintiff, would have paid these costs. With respect to this position, however, the Defendant cites neither to any statutory authority nor to any supporting case law. Instead, the Defendant's position is based entirely in equity; in particular, the Defendant stated to the Court:

Michael Dodd should not have to bear the responsibility/liability for "paying" the $10,358.94 when such would have been paid-in-full if the Plaintiff had properly either not paid the primary

care provider(s), or after having paid them, followed-up to assure that the primary care provider(s) submitted billing(s) to the Bureau of Workers' Compensation and assigned to the Plaintiff their right to receive payment (a subrogation theory).

(Parties' Stipulation of All Facts and Respective Parties' Positions Based on Said Facts at pg. 5–6).

## LEGAL ANALYSIS

Proceedings brought to determine the dischargeability of a particular debt are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(I). Thus, this case is a core proceeding.

The Defendant in this case, although acknowledging that a portion of her debt to the Plaintiff is nondischargeable, seeks to discharge that portion of the debt which she feels was unfairly allocated against her. With respect to the Defendant's request, the Court initially observes that nowhere in the Bankruptcy Code is it provided that a debtor is entitled to receive a partial discharge of his or her debt. Nevertheless, many bankruptcy courts, including this Court, have found that debtors, under certain limited circumstances, may be partial discharge of a particular debt. *See Tennessee Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433 (6th Cir.1998) (permitting partial discharge of a student loan debt); *Graves v. Myrvang (In re Myrvang)*, 232 F.3d 1116 (9th Cir.2000) (bankruptcy court has power to order partial discharge of separate debts arising from terms of a divorce decree).

The statutory authority for this action is found in § 105(a) of the Bankruptcy Code.

■■■ Section 105(a) of the Bankruptcy Code confers upon the bankruptcy courts the equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code. This statutory authority, as the Supreme Court of the United States has pointed out, is in line with "the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 549, 110 S.Ct. 2139, 2142, 109 L.Ed.2d 580 (1990). Bankruptcy courts have used this power in a multitude of different situations. In particular, and although the Court could not find an actual instance where § 105(a) has been applied to partially discharge a debt based on fraud under § 523(a)(2), § 105(a) has been applied, with great regularity, to partially discharge both student loan debts and marital obligations. *See, e.g., In re Hornsby and In re Myrvang, supra.* This power to partially discharge debts, however, is circumscribed in a very important respect: a bankruptcy court is not to apply its equitable powers unless the party to be benefitted has acted in a manner which is entirely consistent with basic principles of equity jurisprudence.[1] *In re Gilmore*, 198 B.R. 686, 690 (Bankr.E.D.Tex.1996); *Robbins v. U.S. Dep't of Educ. (In re Robbins)*, 265 B.R. 763, 765–66 (Bankr. N.D.Ohio 2001).

---

1. It should also be noted that a bankruptcy court's power under § 105(a) is also limited to those actions which are consistent with both the language and the goals of the Bankruptcy Code. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) (a bankruptcy court's equitable powers must be practiced within the confines of the Bankruptcy Code); *Murgillo v. California State Bd. of Equalization (In re Murgillo)*, 176 B.R. 524, 531 (9th Cir. BAP 1995) (a court may exercise its equitable power only to fulfill some specific Code provision, and not to achieve a result not contemplated by the Code).

In considering this tenet as it applies to the particular facts of this case, the Court initially observes that there is no reason to doubt the Defendant's supposition that if Michael Dodd's medical care providers had properly billed the Ohio Bureau of Workers' Compensation, the Plaintiff, having had no cause to pay Michael Dodd's medical bills, would not have had a claim against the Defendant for such expenses. In addition, from the facts presented by the Parties, it appears as if Michael Dodd took all reasonable steps to insure that the Ohio Bureau of Workers' Compensation was properly billed for his medical expenses. Nevertheless, such considerations, standing alone, merely evidence that the Defendant may have a cause of action against Michael Dodd's medical care providers as they, and not the Plaintiff, were responsible for failing to bill the Ohio Bureau of Workers' Compensation. In this regard, the Court notes that equity does not condone the shifting of blame to another innocent party. *See, e.g., Whirlpool Corp. v. Morse*, 222 F.Supp. 645, 657 (D.Minn.1963) (it is a premise of equity that fault should not be shifted where there is no good reason to do so); *City of Huntington Beach v. City of Westminster*, 57 Cal.App.4th 220, 222, 66 Cal.Rptr.2d 826, 826 (1997) ("[t]here is no equitable basis for a total shifting of a loss from one fault-free party to another.").

The Defendant, however, seeks to ascribe liability to the Plaintiff by arguing that the Plaintiff, after it paid Michael Dodd's primary care providers, was under a duty to conduct a follow-up investigation to ensure that the medical care providers of the Defendant properly billed the Ohio Bureau of Workers' Compensation. However, after considering this assertion, the Court finds that even if this assertion were true—and there is nothing in the record which would indicate that the Plaintiff was under either a legal or contractual duty to conduct a follow-up investigation—the Defendant is not deserving of any equitable relief. The following explains why:

A basic tenet of equity jurisprudence is that the party seeking equitable relief must come to the court with "clean hands." The essence of this doctrine is that no person can obtain affirmative relief in equity with respect to a transaction in which he or she has been guilty of inequitable conduct; as was more fully explained by the Supreme Court of the United States in *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*:

> [H]e who comes into equity must come with clean hands. This maxim is far more than a mere banality. It is a self-imposed ordinance that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant. That doctrine is rooted in the historical concept of court of equity as a vehicle for affirmatively enforcing the requirements of conscience and good faith. This presupposes a refusal on its part to be the abettor of iniquity. Thus while equity does not demand that its suitors shall have led blameless lives, as to other matters, it does require that they shall have acted fairly and without fraud or deceit as to the controversy in issue.
>
> This maxim necessarily gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion. Accordingly one's misconduct need not necessarily have been of such a nature as to be punishable as a crime or as to justify legal proceedings of any character. Any willful act concerning the cause of action

which rightfully can be said to transgress equitable standards of conduct is sufficient cause for the invocation of the maxim by the chancellor.

324 U.S. 806, 814–15, 65 S.Ct. 993, 997–98, 89 L.Ed. 1381 (1945).

 In this case, no actual dispute exists that the Defendant committed acts of fraud against the Plaintiff. Furthermore, a strong inference exists—and one in which the Defendant has not attempted to refute—that the loss the Plaintiff incurred in paying Michael Dodd's medical bills is directly related to the prior transgressions committed by the Defendant; that is, no liability for Michael Dodd's medical expenses would have been incurred "but for" the fact that the Defendant was, in the first instance, dishonest with the Plaintiff. As a result, the Defendant, in asking forgiveness for Michael Dodd's medical bills, is essentially saying this to the Court: I admit defrauding the Plaintiff, however, because I didn't intend to defraud the Plaintiff as much as I actually did, I shouldn't be held liable for the excess. Such a position, however, is completely diametric to any notion that the Defendant dealt fairly in her relationship with the Plaintiff. Consequently, the Court will not consider invoking its equitable powers as the Defendant, under any conceivable interpretation, has not come to this Court with "clean hands."

Thus, to summarize, it is the position of this Court that the wrongful acts committed by the Defendant lead directly to the Defendant's obligation to pay for Michael Dodd's medical bills. As a result therefrom, the Court cannot find that the circumstances of this case call for this Court invoking its equitable powers under § 105(a) so as to partially discharge the Defendant of her obligation to the Plaintiff. Therefore, the Defendant's entire obligation to the Plaintiff will be found to be a nondischargeable debt. In reaching this conclusion, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

*ORDERED* that the obligation of the Defendant, Juanita Dodd, to the Plaintiff, the Fulton County Dept. of Human Services, be, and is hereby, determined to be a NONDISCHARGEABLE DEBT.

