In re ALLEGHENY HEALTH, EDU-
CATION AND RESEARCH FOUNDA-
TION, Allegheny University of the
Health Sciences, Allegheny University
Medical Practices, Allegheny Hospi-
tals, Centennial and Allegheny Uni-
versity Hospitals–East, Debtors.

Tenet Healthcare Corporation and
Tenet HealthSystem Philadelphia,
Inc., Plaintiffs,

v.

Kay Williams, CRNP and Pennsylvania
Hospital, Defendants.

Bankruptcy Nos. 98–25773–MBM
through 98–25777–MBM.
Adversary No. 99–2043–MBM.

United States Bankruptcy Court,
W.D. Pennsylvania,
Pittsburgh Division.

May 6, 1999.

David Zalesne, Klehr, Harrison, Harvey, Branzburg & Ellers LP, Philadelphia, PA, Peter D'Apice, Gibson, Dunn & Crutcher LLP, Dallas, TX.

## MEMORANDUM AND ORDER OF COURT

M. BRUCE MCCULLOUGH, Bankruptcy Judge.

**AND NOW,** this 6th day of **May, 1999,** upon consideration of (a) Counts A–F and H of plaintiffs' First Amended Complaint, wherein plaintiffs assert that both defendants (i) misappropriated property of the above-captioned debtors' bankruptcy estate in the form of a computer disk (hereafter "the Zip Disk") and alleged intellectual property (hereafter "the Alleged Intellectual Property"),[1] (ii) violated this Court's order dated October 1, 1998, which order approved the sale of the instant debtors' assets to plaintiffs, because defendants failed to turn over the Zip

---

1. Plaintiffs assert that they own (a) trade secrets in the form of participant and mailing lists, and any other information contained on the Zip Disk, (b) copyrights to two works of authorship known as the "Alternatives Booklets," and (c) tradename rights in the name "Center for Bloodless Medicine and Surgery." Defendants, however, maintain that neither the instant debtors nor plaintiffs, by way of purchase from said debtors, have ever owned protected property rights as just described. For purposes of shorthand, therefore, the Court shall refer to all of plaintiffs' asserted property rights as "the Alleged Intellectual Property."

Disk and Alleged Intellectual Property, (iii) misappropriated plaintiffs' trade secrets, which trade secrets plaintiffs contend comprise a portion of the Alleged Intellectual Property, (iv) engaged in unfair competition under Pennsylvania law because defendants usurped, or passed off as their own, particular portions of the Alleged Intellectual Property, (v) violated the Federal Lanham Act by engaging in the conduct complained of in the unfair competition count, (vi) converted the Zip Disk and the Alleged Intellectual Property, (vii) have engaged in copyright infringement with respect to copyrights which plaintiffs contend comprise a portion of the Alleged Intellectual Property, (b) Count G of plaintiffs' First Amended Complaint, wherein plaintiffs assert that Kay Williams, one of the instant defendants, has breached her fiduciary duty to the debtor-affiliated enterprise whose assets were ultimately purchased by plaintiffs on October 1, 1998, because Williams misused the Alleged Intellectual Property, (c) defendants' Answer and Affirmative Defenses to plaintiffs' initial complaint, wherein defendants contend, *inter alia*, that (i) this Court lacks subject matter jurisdiction over the claims pursued by plaintiffs in their complaint, (ii) venue is not proper in this Court with respect to plaintiffs' claims, and defendants are unfairly prejudiced by the inconvenient geographic location of plaintiffs' chosen forum (i.e., this Court), and (iii) plaintiffs' complaint fails to state claims upon which monetary, equitable, or injunctive relief can be granted, (d) the parties' respective trial briefs and memoranda of law regarding jurisdiction and venue, (e) this Court's order dated October 1, 1998, and in particular paragraph 7 thereof, which paragraph authorized the creation of an Indemnity Escrow from which could be satisfied the instant debtors' obligations of indemnity vis-a-vis plaintiffs as set forth in the Asset Purchase Agreement between the instant debtors and plaintiffs (hereafter "the Asset Purchase Agreement"), and (f) the Asset Purchase Agreement, and in particular, (i) paragraph 3.12 thereof, wherein the instant debtors warranted or represented that they "own[ed] and h[e]ld good and valid title . . . to all" of their personal property, and that, "[a]t closing[, they] . . . w[ould] convey to . . . [plaintiffs] good and valid title to all" such property, and (ii) paragraph 9.01(a) thereof, wherein the instant debtors and plaintiffs agreed that the debtors would indemnify plaintiffs from and against any losses that plaintiffs might incur as a result of "any inaccuracy of any representation or warranty of" the debtors; and subsequent to the Court's denial of plaintiffs' request for a temporary restraining order with respect to defendants' continued use of the Alleged Intellectual Property; and after hearings on March 15–16, 1999, and April 13, 1999, it is **hereby ORDERED, ADJUDGED, AND DECREED** that (a) the first count of plaintiffs' First Amended Complaint, which count pleads a claim for misappropriation of bankruptcy estate property, shall be **DISMISSED WITH PREJUDICE** because said count fails to **state a claim upon which relief can be granted,** (b) the **second count** of plaintiffs' First Amended Complaint, which count pleads a claim for violation of the Court's October 1, 1998 order, shall be **DISMISSED WITH PREJUDICE** because said count, to the extent that it is premised upon defendants' failure to turn (1) the Zip Disk over to plaintiffs, is **rendered moot** by defendants' **subsequent turnover** of the Zip Disk, and (ii) the Alleged Intellectual Property over to plaintiffs, **fails to state a claim upon which relief can be granted,** (c) **this Court has SUBJECT MATTER JURISDICTION** over the **remaining six counts** of plaintiffs' First Amended Complaint because their outcome could conceivably have an effect upon the bankruptcy estate of the instant debtors, (d) plaintiffs' remaining six counts each **constitute NONCORE PROCEEDINGS,** (e) **VENUE** with respect to plaintiffs' remaining

six counts is **appropriate** in this Court pursuant to 28 U.S.C. § 1409(a) because 28 U.S.C. § 1409(d) does not apply to said counts, and (f) resolution of defendants' request, pursuant to 28 U.S.C. § 1412, for transfer of plaintiffs' remaining six counts to the bankruptcy court for the **Eastern District of Pennsylvania,** shall be **DEFERRED** until after **June 10, 1999,** which is the date by which the parties must file formal written pleadings regarding such relief.

### I.

The first count of plaintiffs' First Amended Complaint pleads a claim for misappropriation of property of the *instant debtors' bankruptcy estate* in the form of the Zip Disk and the Alleged Intellectual Property, and seeks, as the primary requested relief, an order from this Court directing defendants to turn such property over to *plaintiffs.* The Court finds curious this particular cause of action, and for several reasons must ultimately dismiss it for failure to state a claim upon which relief can be granted.

First, there can be no dispute, and the parties appear to agree, that plaintiffs purchased the Zip Disk and the Alleged Intellectual Property, to the extent that it exists, as a result of the October 1, 1998 sale in this Court. Consequently, the Zip Disk and the Alleged Intellectual Property, to the extent that it exists, clearly can no longer constitute property of the instant debtors' bankruptcy estate; instead, said property is now exclusively owned by *plaintiffs.* That being the case, it simply is not legally possible for plaintiffs to recover, via the first count in their instant complaint, misappropriated estate property; rather, any such recovery necessarily would be of plaintiffs' own property instead of property of the estate. Plaintiffs, of course, recognize this point because they seek recovery of the property in

question not for the benefit of the debtors' bankruptcy estate but for themselves, as reflected in their prayer for relief in their first count.

With the understanding that plaintiffs' first count merely pleads a routine cause of action against defendants for misappropriation of, and ultimate turnover to, plaintiffs' of plaintiffs' property, a dismissal of plaintiffs' first count would be inappropriate because said count, described in that fashion, states an actionable claim upon which relief can be granted. However, and while the language in plaintiffs' First Amended Complaint does not reveal as much, a reading of plaintiffs' final memorandum on jurisdiction and venue (i.e., Plaintiffs' Reply to Defendants' Memorandum of Law Regarding Jurisdiction and Venue) makes clear to this Court that plaintiffs, via their first count, essentially assert the right of turnover of bankruptcy estate property which is exclusively provided to a trustee or debtor-in-possession pursuant to 11 U.S.C. § 542(a). Defendants vigorously maintain that plaintiffs lack standing to assert any such right of property recovery under § 542(a). Plaintiffs nevertheless contend that they have standing to assert said right because, according to plaintiffs, they obtained said right, or more appropriately the cause of action embodying said right, as a result of the October 1, 1998 purchase of assets from the instant debtors. For support of their position, plaintiffs point to paragraph 2.01(*l*) of the Asset Purchase Agreement, which provides, in relevant part, that the instant debtors "shall sell [or] assign ... to [plaintiffs] ... any and all claims and causes of action, including privileges related thereto, of ... [the debtors] against third parties relating to the value, condition or title to the Assets." Unfortunately for plaintiffs, the Court must reject their position for several reasons.[2]

---

2. The Court has subject matter jurisdiction over plaintiffs' first count pursuant to 28 U.S.C. § 1334(b), and resolution of said count

constitutes a core matter under 28 U.S.C. § 157(b)(2)(A) and (E).

First, plaintiffs could not have obtained the instant debtors' bankruptcy estate's § 542(a) cause of action against defendants via the October 1, 1998 sale because (a) such a cause of action is not significantly unlike other statutorily-created actions under Chapter 5 of the Bankruptcy Code, which actions may not be assigned unless, consistent with 11 U.S.C. § 1123(b)(3)(B), such an assignment is to a representative of a bankruptcy estate for the sole purpose of pursuing said cause of action, *see In re Sweetwater,* 55 B.R. 724, 729–34 (D.Utah 1985), *aff'd in part, rev'd in part on other grounds,* 884 F.2d 1323 (10th Cir.1989) (also pointing out that assignment of such a cause of action under 11 U.S.C. § 1123(a)(5)(B), (D), and (b)(4) is impermissible because such an action, while it belongs to a debtor or its estate, does not constitute "property of the estate" under 11 U.S.C. § 541(a)); 9B Am. Jur.2d *Bankruptcy* § 2387 (1991); *In re Morning Treat Coffee Company, Inc.,* 77 B.R. 62, 65 (Bankr.M.D.La.1987); *In re Texas General Petroleum Corporation,* 58 B.R. 357, 358 (Bankr.S.D.Tex.1986); *In re Integrated Testing Products Corporation,* 69 B.R. 901, 905 (D.N.J.1987); *In re Sapolin Paints, Inc.,* 11 B.R. 930, 937 (Bankr. E.D.N.Y.1981), and (b) plaintiffs cannot appropriately be considered to be a representative of the instant debtors' bankruptcy estate since plaintiffs' pursuit of any cause of action would be on their own behalf rather than for the benefit of said bankruptcy estate. *See Sweetwater,* 884 F.2d at 1326–27 (" 'The primary concern is whether a successful recovery by the appointed representative would benefit the debtor's estate and particularly, the debtor's unsecured creditors.' ").

Second, the Court finds that the parties to the October 1, 1998 sale expressly agreed that paragraph 2.01(*l*) of the Asset Purchase Agreement would not include within its scope the instant debtors' bankruptcy estate's § 542(a) cause of action as evidenced by the inclusion of paragraph 2.02(k) in the Asset Purchase Agreement. *See In re AHERF,* Case No. 98–25773– MBM (10/1/98), Ex. A (Asset Purchase Agreement), para. 2.02(k) ("Notwithstanding the generality of Section 2.01, the following assets (the "Excluded Assets") are not a part of the sale and purchase contemplated by this Agreement and are excluded from the Assets: ... (k) any claims or causes of action of the Sellers against third parties not covered by Section 2.01(*l*) or (o) above, including avoidance claims available to Sellers under Chapter 5 of the Bankruptcy Code").

Finally, even if plaintiffs were to have obtained the instant debtors' bankruptcy estate's § 542(a) cause of action against defendants via the October 1, 1998 sale, such a purchase would not have provided plaintiffs with the right to seek recovery of the assets in question for themselves given that § 542(a) only provides for a turnover of property to the bankruptcy estate rather than to, as in the case of plaintiffs, unrelated third parties. Because plaintiffs' first count requests relief in the form of turnover of the property in question to themselves rather than the estate, said count thus fails to state a claim upon which relief can legally be granted.

Therefore, plaintiffs' first count, premised upon § 542(a) as plaintiffs now assert, necessarily must be dismissed for failure to state a claim upon which relief can be granted.

## II.

The second count of plaintiffs' First Amended Complaint pleads a claim for violation by defendants of the Court's October 1, 1998 order and, in particular, paragraph 17 thereof. Paragraph 17 of said order provides that "[a]ll entities who are presently, or on the Closing Date may be, in possession of some or all of the [instant debtors' a]ssets are hereby directed to surrender possession of said [a]ssets to ... [plaintiffs] on the Closing Date." Plaintiffs contend that defendants violated the directive in said paragraph 17 because they failed to surrender to plaintiffs the

Zip Disk and the Alleged Intellectual Property, both of which were owned by the instant debtors prior to the October 1, 1998 sale. The Court must dismiss said count because, to the extent that it is premised upon defendants' failure to turn (i) the Zip Disk over to plaintiffs, it is rendered moot by defendants' subsequent turnover of the Zip Disk, and (ii) the Alleged Intellectual Property over to plaintiffs, it fails to state a claim upon which relief can be granted.[3]

With respect to plaintiffs' second count vis-a-vis the Zip Disk, plaintiffs must concede that they have, subsequent to the filing of their complaint, received all of the relief which they presently seek in said count. Indeed, the only relief sought in plaintiffs' second count is turnover to them of the assets in question, and with defendants' turnover of the Zip Disk subsequent to plaintiffs' filing of their complaint, plaintiffs' request with respect to the Zip Disk has thereby been satisfied. Consequently, plaintiffs' second count as it pertains to the Zip Disk must be dismissed because it has been rendered moot.

■ With respect to plaintiffs' second count vis-a-vis the Alleged Intellectual Property, plaintiffs argue that defendants retain, continue to use for their own benefit, and thus possess at least some portion of the Alleged Intellectual Property in violation of paragraph 17 of the Court's October 1, 1998 order. Unfortunately for plaintiffs, their foregoing rationale is flawed because, as will be explained below, said paragraph 17 legally could not have included within its scope any of the purported assets that comprise the Alleged Intellectual Property.

■ The Court agrees with plaintiffs that the genesis for the relief that the Court granted in paragraph 17 of its October 1, 1998 order is 11 U.S.C. § 542(a), and that, in accordance with said statutory

provision, the Court directed turnover of estate property to the instant debtors so that they could, in turn, simultaneously transfer said property to plaintiffs via the October 1, 1998 sale. However, "[i]t is settled law" that (a) turnover actions under § 542 cannot be used "to demand assets whose title is in dispute," *U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1472 (D.C.Cir. 1991); *see also In re 2045 Wheatsheaf Associates*, 1998 WL 910228 at *10 (Bankr. E.D.Pa.1998) (quoting *In re Johnson*, 215 B.R. 381, 386 (Bankr.N.D.Ill.1997), to the effect that "[t]urnover under § 542 of the Code 'is not intended as a remedy to determine disputed rights of parties to property. Rather, it is intended as a remedy to obtain what is acknowledged to be property of the bankruptcy estate.'"); *In re Acolyte Electric Corporation v. City of New York*, 69 B.R. 155, 171 (Bankr. E.D.N.Y.1986) ("To the extent that a BONAFIDE dispute exists with regard to the existence of an identifiable fund or res, a proceeding to recover that res is not a turnover within the meaning of BAFJA unless and until the existence, magnitude and identity of the res are first established. The jurisdiction to establish this existence, magnitude and identity is precisely what *Marathon* prohibits Congress from granting to the bankruptcy court."); *In re FLR Company, Inc.*, 58 B.R. 632, 634 (Bankr.W.D.Pa.1985) ("Implicit in the bankruptcy context of turnover is the idea that the property being sought is clearly the property of the Debtor but not in the Debtor's possession. Turnover, 11 U.S.C. § 542, is not the provision of the Code to determine the rights of the parties in legitimate contract disputes."); *In re Ven–Mar International, Inc.*, 166 B.R. 191, 192–93 (Bankr.S.D.Fla.1994) ("Section 542 does not provide trustees and debtors in possession with the ability to recover property where a dispute exists between the parties"), and (b) actions seeking a turnover of assets whose title is in dispute can only

---

**3.** As is the case with respect to plaintiffs' first count, the Court has subject matter jurisdiction over plaintiffs' second count pursuant to 28 U.S.C. § 1334(b), and resolution of said count constitutes a core matter under 28 U.S.C. § 157(b)(2)(A) and (E).

constitute, at the most, noncore rather than core proceedings given that such actions are not true turnover actions within the meaning of § 542(a) and 28 U.S.C. § 157(b)(2)(E). *See Acolyte Electric Corporation,* 69 B.R. at 171–72; *Ven Mar International,* 166 B.R. at 193; *In re CIS Corporation,* 172 B.R. 748, 759–60 (S.D.N.Y.1994); *In re Shea & Gould,* 198 B.R. 861, 868 (Bankr.S.D.N.Y.1996). Therefore, and because this Court may not enter orders and judgments in noncore proceedings, *see* 28 U.S.C.A. § 157(c)(1) (West 1993), the Court must necessarily interpret paragraph 17 of its October 1, 1998 order as encompassing only those assets the title to which are not in dispute. That being the case, and since a bona fide dispute clearly exists with respect to every count of plaintiffs' instant complaint as to whether the Alleged Intellectual Property was titled in the instant debtors prior to the October 1, 1998 sale—or, indeed, whether such property even constitutes intellectual property as such—the Court must necessarily conclude that its October 1, 1998 order does not pertain to the Alleged Intellectual Property. Consequently, the Court must also conclude that (a) defendants, even if they possess assets that comprise the Alleged Intellectual Property, nevertheless do not also thereby possess assets that are the subject of the turnover directive contained in paragraph 17 of this Court's October 1, 1998 order, (b) defendants thus also cannot have violated said order by retaining possession of said assets, and (c) plaintiffs' second count, to the extent that it is premised upon a violation of said court order by defendants, necessarily fails to state a claim upon which relief can be granted.

Therefore, plaintiffs' second count pleading a claim for defendants' violation of the Court's October 1, 1998 order must be dismissed (a) as moot to the extent that it is premised upon defendants' failure to turn the Zip Disk over to plaintiffs, and (b) for failure to state a claim upon which relief can be granted to the extent that it is premised upon defendants' failure to turn the Alleged Intellectual Property over to plaintiffs.

## III.

■ The remaining six counts of plaintiffs' First Amended Complaint essentially plead various causes of action against defendants for infringement of plaintiffs' rights in the Alleged Intellectual Property. As an initial matter, the Court must reject outright plaintiffs' contention that the Court can exercise subject matter jurisdiction over any part of the instant adversary proceeding, including plaintiffs' last six counts, pursuant to 28 U.S.C. § 1334(e) because (a) § 1334(e) only provides a bankruptcy court with jurisdiction over property of a debtor or a debtor's bankruptcy estate, *see* 28 U.S.C.A. § 1334(e) (West 1998), (b) such "jurisdiction does not follow the property, but rather, it lapses when the property leaves ... [a] debtor's estate," *In re Hall's Motor Transit Company,* 889 F.2d 520, 522 (3rd Cir.1989); *In re BNW, Inc.,* 201 B.R. 838, 848–49 (Bankr.S.D.Ala.1996); *In re Edwards,* 962 F.2d 641, 643 (7th Cir.1992); *In re Heath,* 198 B.R. 298, 303 (S.D.Ind. 1996), and (c) as set forth in part I above, none of the property at issue herein, as of the filing of plaintiffs' initial complaint, constituted property of either the instant debtors or their bankruptcy estate. Furthermore, the Court concludes that, with respect to the Court's subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) over "civil proceedings arising under title 11, or arising in ... [a] case[ ] under title 11," plaintiffs' last six counts plead actions that neither (a) arise under title 11 since the actions pursued via said counts do not involve any substantive rights created by provisions of the Bankruptcy Code, *see In re Marr Broadcasting Company, Inc.,* 79 B.R. 673, 677 (Bankr.S.D.Tex.1987) (stating test for exercise of "arising under" jurisdiction); *In re Wood,* 825 F.2d 90, 97 (5th Cir.1987) (same); *Halper v. Halper,* 164 F.3d 830, 836–37 (3rd Cir.1999) (citing *In re Continental Airlines,* 125 F.3d 120,

130–31 (3rd Cir.1997), and *In re Guild and Gallery Plus, Inc.*, 72 F.3d 1171, 1178 (3rd Cir.1996), both of which in turn cite to, and agree with, *Wood* ), nor (b) arise in a case under title 11 since intellectual property infringement actions can arise other than in the context of a bankruptcy case. *See Id.* (stating test for exercise of "arising in" jurisdiction). However, and contrary to defendants' pleas, this Court concludes that plaintiffs' six remaining counts are sufficiently related to the instant bankruptcy case such that this Court has "related to" subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b).[4]

■ "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984) (emphasis theirs). The Court concludes that the outcome of plaintiffs' six remaining counts could conceivably have an effect upon the bankruptcy estate of the instant debtors given that (a) plaintiffs, in order to prevail on any of said remaining counts, necessarily must establish, *inter alia*, the existence, as well as the ownership by the debtors prior to the October 1, 1998 sale, of each item of Alleged Intellectual Property at issue, *see* 18 Am. Jur.2d *Copyright and Literary Property* § 205 (1985) ("One of the statutory requirements for bringing a[ copyright] infringement action is that the plaintiff own the copyright"); 54A Am.Jur.2d *Monopolies, Restraints of Trade, and Unfair Trade Practices* § 1114 (1996) ("A plaintiff claiming misappropriation of a trade secret must prove[, *inter alia*,] that … the plaintiff possessed a trade secret"); 74 Am.Jur.2d *Trademarks and Tradenames* § 169 (1974) (burden of establishing that words have "acquired a secondary, special, or trade meaning … ordinarily rests

upon the plaintiff"), (b) an ultimate resolution of said counts in defendants' favor, and in particular a finding that the Alleged Intellectual Property never existed or that the instant debtors never owned it, may evidence a breach by the instant debtors of the warranty/representation which they made in paragraph 3.12 of the Asset Purchase Agreement regarding ownership and title to personal property which was the subject of the October 1, 1998 sale, (c) such a breach by the instant debtors of said warranty/representation would trigger application of the instant debtors' indemnification obligation as set forth in paragraph 9.01(a) of the Asset Purchase Agreement, and (d) the subsequent creation of such an indemnification obligation on the instant debtors' part would undoubtedly impact the pending administration of their bankruptcy estate.

Defendants dispute the proposition that this Court has subject matter jurisdiction over plaintiffs' remaining six counts simply because the outcome of said counts could indirectly impact the instant debtors' bankruptcy estate via a contingent indemnification obligation, and point out in support of their position that the Third Circuit in *Pacor* rejected a finding of jurisdiction with respect to an action between nondebtor parties under somewhat similar circumstances. Unfortunately for defendants, this Court can, for the same reasons that are also expressed in *In re Wolverine Radio Co.*, 930 F.2d 1132, 1143 (6th Cir.1991), distinguish the action involving nondebtor parties in Pacor from the remaining counts in the instant adversary proceeding. In particular, the parties herein are "more intertwined" than were the parties in Pacor as evidenced by the fact that, unlike the debtor in *Pacor* (ie., Johns Manville Corporation), the instant debtors (a) have agreed and *contractually bound* themselves to "indemnify, defend[,] and hold harmless" plaintiffs, and (b) could be affected by the outcome of plaintiffs' remain-

---

**4.** Because the Court concludes that it can exercise "related to" subject matter jurisdiction over plaintiffs' last six counts under 28 U.S.C. § 1334(b), the Court need not address

whether (a) it can legally exercise "supplemental jurisdiction" under 28 U.S.C. § 1367, or (b) such "supplemental jurisdiction" would apply to plaintiffs' remaining counts.

ing counts and, in particular, most likely would be bound by the principles of *res judicata* and collateral estoppel from subsequently challenging any findings or conclusions rendered in the instant litigation over plaintiffs' six remaining counts.[5] *See Id.*; *see also In re Dow Corning Corporation*, 86 F.3d 482, 491–94 (6th Cir.1996) (also citing *In re Marcus Hook Development Park, Inc.*, 943 F.2d 261, 264 (3rd Cir.1991), for the proposition "that 'automatic' liability is not necessarily a prerequisite for a finding of 'related to' jurisdiction"); *Halper*, 164 F.3d at 837–38 (also quoting from *Marcus Hook* to the effect that " '[a] key word in . . . [the *Pacor* test] is conceivable. Certainty, or even likelihood, is not a requirement.' "). Therefore, the Third Circuit's decision in *Pacor* does not dictate a decision in the instant adversary proceeding that this Court lacks subject matter jurisdiction over plaintiffs' six remaining counts.

## IV.

 While the Court has subject matter jurisdiction over plaintiffs' remaining six counts, such subject matter jurisdiction, as set forth in part III above, is in the nature of "related to" jurisdiction. The significance of this point is that plaintiffs' six remaining counts constitute noncore proceedings in the instant bankruptcy case, *see Halper*, 164 F.3d at 837; *Guild and Gallery Plus*, 72 F.3d at 1178; *Wood*, 825 F.2d at 97; *Marr Broadcasting Company*, 79 B.R. at 677; 28 U.S.C.A. § 157(b)(1) (West 1993) ("Bankruptcy judges may hear and determine . . . all core proceedings *arising under title 11, or arising in a case under title 11* "); 1 *Collier on Bankruptcy*, paras. 3.01[4][c] at 3–20; 3.01[4][c][ii] at 3–23; 3.02[2] at 3–35 (Bender 1998) ("Related proceedings . . . are excluded from being treated as 'core proceedings' by 28 U.S.C. § 157(b)(1)," and "[t]he phraseology of section 157 leads to the conclusion that there is no such thing as a core matter which is 'related to' a case under title 11"),[6] which means that the Court, rather than determining and entering judgment on said counts, may only make proposed findings of fact and

**5.** The Court disagrees with defendants' contention that, much like the debtor in Pacor, the instant debtors will not be bound by, and thus may subsequently challenge, any decision or part thereof rendered in plaintiffs' instant litigation over its six remaining counts. The Court concludes that defendants' position is likely incorrect because (a) the law in Pennsylvania is clear that "both [an] indemnitor and [an] indemnitee are bound[, in a subsequent action between themselves,] by the findings necessary to the judgment in . . . [a prior] action" "where . . . the indemnitor, with notice of the [prior] action and of the indemnitee's request that he defend it, does not participate in the defense but leaves it to the reasonable efforts of the indemnitee," *Crawford v. Pope & Talbot, Inc.*, 206 F.2d 784, 795 (3rd Cir.1953) (citing *Builders Supply Co. v. McCabe*, 366 Pa. 322, 77 A.2d 368 (1951)); *see also Humble Oil & Refining Company v. Philadelphia Ship Maintenance Co.*, 444 F.2d 727, 734 (3rd Cir.1971) (citing *Crawford* with approval); *Frank v. McCafferty Ford Company*, 192 Pa.Super. 435, 161 A.2d 896, 898 (1960) (citing three cases prior to *Crawford* for the same proposition as set forth in *Crawford* but with respect to the particular form of indemnity obligation assumed by a seller of property who also warrants title thereto); Re-

statement (Second) of Judgments § 57 cmt. h (1980) (stating rule similar to that contained in *Crawford* and *McCafferty Ford*, as well as pointing out that "[n]otice alone may be sufficient if the indemnitee shows that the indemnitor could have conducted no better defense of the title than that which was presented by the indemnitee"); Restatement (Second) of Judgments § 43 cmt. e (1980) (referencing Restatement (Second) of Judgments § 57 if a property transfer is accompanied by an express warranty of title by the transferor in favor of the transferee), (b) the instant debtors, as indemnitor to plaintiffs via paragraph 9.01(a) of the Asset Purchase Agreement, were obviously notified of plaintiffs' instant complaint against defendants herein, (c) the instant debtors, as set forth in said paragraph 9.01(a), agreed not only to indemnify and hold harmless plaintiffs from any pertinent loss *but also to defend* plaintiffs against any such loss, and (d) plaintiffs have clearly undertaken to defend their alleged interests offensively in the instant adversary proceeding against defendants.

**6.** The Court notes that, if the instant debtors, rather than selling the Alleged Intellectual Property to plaintiffs on October 1, 1998, had retained said property and then pursued the

conclusions of law therein. *See* 28 U.S.C.A. § 157(c)(1); *Halper,* 164 F.3d at 836.

## V.

Although the Court concludes that it has "related to" jurisdiction over plaintiffs' six remaining counts, which jurisdiction would generally support venue in this Court since it is also the forum in which the instant bankruptcy case presently resides, *see* 28 U.S.C.A. § 1409(a) (West 1993), defendants contend that venue in this district is improper because of the exception to such venue which is set forth in 28 U.S.C. § 1409(d). For the reasons explained below, however, the Court concludes that § 1409(d) does not apply to plaintiffs' remaining counts.

28 U.S.C. § 1409(d) provides, in pertinent part, that "a proceeding . . . related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor" may only be commenced by a trustee "in the district court for the district where a[s]tate or [f]ederal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought." 28 U.S.C.A. § 1409(d) (West 1993). Defendants argue that § 1409(d) applies to the instant adversary proceeding including plaintiffs' six remaining counts—which counts are the only relevant ones to consider at this point since the first two counts are dismissed by virtue of parts I and II above—because, according to defendants, said adversary proceeding (a) is based on a claim or claims that arose from the operation of the instant debtors' business, and (b) is brought by the trustee of the instant bankruptcy case since, defendants argue, if plaintiffs can maintain that they have standing to pursue bankruptcy causes of action which legally could only have been entrusted to said trustee, then defendants can equitably counter that said causes of action are procedurally brought by said trustee. Unfortunately for defendants, the Court must reject each of the above prongs of defendants' rationale.

First, the claims advanced in plaintiffs' six remaining counts pertain to property that, prior to plaintiffs' filing of its complaint, had passed out of the instant debtors' bankruptcy estate, which means that said counts necessarily cannot be based upon claims that arose from the operation of the instant debtors' business.[7] Second, § 1409(d), by its terms, only applies to proceedings instituted by a trustee or, by way of 11 U.S.C. § 1107(a), a debtor-in-possession. However, plaintiffs' six remaining counts are brought by neither the appointed bankruptcy trustee for the instant case nor the instant debtors themselves and, given that the property which is at issue throughout plaintiffs' complaint passed outside of the instant debtors' bankruptcy estate prior to plaintiffs' filing of said complaint, neither said trustee nor the instant debtors would have even had standing to pursue said counts. With respect to defendants' contention that

---

causes of action set forth in plaintiffs' last six counts themselves, then the Court would have had core jurisdiction over said litigation because it would have been brought by the instant debtors to address an alleged post-petition wrongful act by defendants, which matter would have (a) arisen in a case under title 11, and (b) concerned the administration of the instant debtors' bankruptcy estate. Unfortunately for plaintiffs, they are not entitled to leverage off of what would have transpired had the October 1, 1998 sale not occurred. The Court also notes that it matters not that this Court can exercise core jurisdiction over plaintiffs' first two counts because, as set

forth in parts I and II above, the Court dismissed said counts with prejudice.

7. Although the Court does not need to analyze the pertinence of § 1409(d) to plaintiffs' first two counts since said counts are dismissed as set forth in parts I and II above, the Court nevertheless points out that § 1409(d) would not apply to said counts because they are based on alleged bankruptcy causes of action that concern administration of the instant debtors' bankruptcy estate rather than claims stemming from the operation of said debtors' business.

§ 1409(d) should be deemed to apply herein if plaintiffs can maintain that they have standing to pursue bankruptcy causes of action which legally have been entrusted to the trustee for the instant case, the Court can reject said theory without any fear of prejudice or inequity to defendants given that the Court also has rejected, in part I above, plaintiffs' assertion that they have standing to pursue the instant trustee's bankruptcy causes of action.

Therefore, venue in this Court is appropriate in the first instance with respect to plaintiffs' remaining six counts pursuant to § 1409(a) because § 1409(d) does not apply to said counts.

## VII.

Defendants, in their Memorandum on Jurisdiction and Venue, also formally request that venue over the remainder of the instant adversary proceeding be transferred to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1412. Plaintiffs counter in their response to said memorandum that defendants have belatedly made their request under § 1412, implicitly raising the issue of whether defendants' § 1412 request was made in an untimely fashion. The Court shall address both the timing of, as well as the propriety of the manner in which defendants raised, the § 1412 request.

■ 28 U.S.C. § 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C.A. § 1412 (West 1993). Furthermore, Fed.R.Bankr.P. 7087 provides that, "[o]n motion and after a hearing, the [bankruptcy] court may transfer an adversary proceeding ... to another district pursuant to 28 U.S.C. § 1412," Fed. R.Bankr.P. 7087, 11 U.S.C.A. (West 1999), thereby signaling that this Court has the power to transfer venue over an adversary proceeding in its discretion.

■ Applying § 1412 and Fed. R.Bankr.P. 7087 to defendants' § 1412 transfer request, the Court concludes that defendants' § 1412 request is not presently untimely. First, Fed.R.Civ.P. 12, which is made applicable to adversary proceedings pursuant to Fed.R.Bankr.P. 7012, does not operate to bar defendants' § 1412 request. While Fed.R.Civ.P. 12(a), (b), (g), and (h) admittedly place time restrictions upon the bringing of certain motions, F.R.C.P. 12(b) only places restrictions upon the bringing of motions for "improper venue" rather than those, as in the instant proceeding, which seek transfer of a matter over which venue is proper in the first instance. Second, the Court is aware of but one case that has addressed the timeliness of a motion brought under Fed. R.Bankr.P. 7087, and in that case such a motion was held not to have been raised in a timely fashion only because it had been brought after the time which was set for a trial on the merits. *See In re Suburbia Systems, Inc.,* 17 B.R. 132, 133 (Bankr. W.D.Mo.1981). However, that case is inapposite to this adversary proceeding because the Court has yet to set a date for a trial on the merits of plaintiffs' remaining six counts, and has thus far only addressed said merits in order to ascertain the Court's subject matter jurisdiction with respect to said counts. Because the Court is not aware of any other time limitations with respect to the bringing of § 1412 motions, the Court finds that defendants' instant request for transfer under § 1412 is not untimely.

■ However, while defendants' § 1412 transfer request is not untimely at this juncture, the Court nevertheless questions whether defendants, by raising their § 1412 transfer request in a memorandum, have raised said request in the form of a motion as explicitly called for under Fed. R.Bankr.P. 7087. The Court is aware of case authority for the proposition that various filed writings can serve as motions that satisfy Fed.R.Civ.P. 7(b)(1), *see, e.g., In re Mancini,* 1986 WL 28905 at *3–4

(Bankr.S.D.N.Y.1986) (citing, *inter alia,* *Raughley v. Pennsylvania Railroad Co.,* 230 F.2d 387, 391 (3rd Cir.1956), to the effect that a letter by plaintiff's counsel requesting relief and an affidavit filed to obtain an order could suffice as written motions), and that Fed.R.Civ.P. 7(b)(1) is (a) made applicable to bankruptcy matters pursuant to Fed.R.Bankr.P. 7007, and (b) the basis for Fed.R.Bankr.P. 9013, which contains language quite similar to Fed. R.Civ.P. 7(b)(1). *See Id.* These authorities, along with the fact that plaintiffs undertook to respond to defendants' § 1412 request in plaintiffs' response to defendants' memorandum, provide defendants with strong support that their memorandum could suffice as a motion for § 1412 relief in accordance with Fed.R.Bankr.P. 7087. The Court also (a) recognizes that defendants raise as a defense, in paragraph 59 of their answer to plaintiffs' initial complaint, that they will be unfairly prejudiced by the inconvenience of having to defend plaintiffs' complaint in this district, which defense can perhaps be viewed as a cryptic request for transfer under § 1412, and (b) recalls that defendants, at the last hearing prior to the entering of this order, may have orally moved for any new relief that they requested in their memorandum, which oral motion would superficially appear to satisfy Fed. R.Bankr.P. 9013 and Fed.R.Civ.P. 7(b)(1) since it was made during a hearing.

■ Nevertheless, the Court is also aware of case authority to the effect that, because a memorandum or brief does not constitute a pleading, a request for relief contained therein cannot constitute a written motion. *See, e.g., In re Gilmore,* 198 B.R. 686, 692 (Bankr.E.D.Tex.1996). Moreover, the Court believes that the Gilmore holding may apply with equal force and effect regardless of whether an opposing party sees fit to respond to a request for new relief in a memorandum or brief because, since said request could be viewed as not having been appropriately placed before a court, such a response, for due process reasons, might not be binding. With respect to the defense raised by defendants in paragraph 59 of their answer to plaintiffs' initial complaint, the Court also cannot find that said defense satisfies the requirements of Fed.R.Bankr.P. 9013 and Fed.R.Civ.P. 7(b)(1) given that said paragraph, while perhaps stating one ground for relief under § 1412, nevertheless does not (a) state enough of a basis for transfer under § 1412, and (b) set forth any relief or order sought from the Court. Finally, because of the gravity of a transfer of venue under § 1412, the Court cannot accept an oral motion requesting the same notwithstanding Fed.R.Bankr.P. 9013 and Fed.R.Civ.P. 7(b)(1); to accept an oral motion regarding such an important matter would deprive an opposing party of its constitutionally-guaranteed opportunity to effectively respond.

Given that a genuine dispute exists regarding whether defendants have satisfied the motion requirement of Fed.R.Bankr.P. 7087, because the Court does not wish to create further nonproductive litigation by resolving said dispute, and since defendants' § 1412 request is not presently untimely, the Court directs defendants, by May 26, 1999, to file a formal written motion seeking relief under § 1412. Plaintiffs shall have until June 10, 1999, to respond, after which, consistent with Fed. R.Bankr.P. 7087, the Court shall, if the parties so desire as expressed in their aforementioned pleadings, schedule a hearing with respect to transfer under § 1412. If the parties do not express their desire for a hearing on the matter, then the Court will simply resolve defendants' § 1412 request on the basis of the pleadings to be filed.

## VII.

■ The Court wishes to make two final procedural points with respect to its decision herein. First, the Court concludes that its decision to dismiss plaintiffs' first two counts is proper at this time given that (a) the reasons for such dismiss-

al were raised by defendants as affirmative defenses in defendants' Answer and Affirmative Defenses to plaintiffs' initial complaint, thereby placing plaintiffs on notice of such grounds for dismissal, (b) the parties discussed the merits of plaintiffs' first two counts throughout the numerous hearings that have been held thus far despite the fact that the focus of said hearings was directed at jurisdictional and venue issues, and (c) it would not be proper, in the Court's view, to allow plaintiffs' first two counts to impact a decision regarding subject matter jurisdiction over, and venue of, plaintiffs' last six counts since the Court can determine at this time, without any difficulty, that plaintiffs cannot possibly prevail on their first two counts.

■ Second, pursuant to Fed.R.Civ.P. 54(b), made applicable to the instant adversary proceeding by Fed.R.Bankr.P. 7054(a), the Court's decision herein with respect to plaintiffs' first two counts is neither final nor subject to appeal at this time. Furthermore, the Court will neither certify the instant decision as final nor grant leave to appeal said decision until the Court renders its decision regarding the transfer of plaintiffs' last six counts pursuant to 28 U.S.C. § 1412.

## VIII.

**IN SUMMARY,** (a) the first two counts of plaintiffs' complaint pleading causes of action for defendants' misappropriation of estate property and defendants' violation of the Court's October 1, 1998 order are **DISMISSED WITH PREJUDICE,** (b) this Court has **NONCORE SUBJECT MATTER JURISDICTION** over the remaining six counts of plaintiffs' First Amended Complaint, (c) **VENUE** with respect to plaintiffs' remaining six counts is appropriate in this Court in the first instance, and (d) resolution of defendants' § 1412 transfer request shall be **DEFERRED** until after June 10, 1999.