### In re Kenneth Warren PRICE and Cay Denise Price, Debtors.

### Kenneth Warren Price and Cay Denise Price, Plaintiff,

### v.

### United States of America, Department of the Treasury, Internal Revenue Service and Kenneth Havis, Trustee, Defendant.

**Bankruptcy No. 96–50756–H4–7.
Adversary No. 97–4077.**

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Dec. 11, 1998.

---

34. A newspaper in El Paso in fact publishes a daily report of persons who have filed bankruptcy in that city.

Carolyn A. Taylor, Hughes, Watters & Askanase, Houston, TX, debtors.

Kenneth Price, Houston, TX, pro se.

Cay Price, Houston, TX, pro se.

Nancy Griml, U.S. Attorney's Office, Houston, TX, for U.S.A./I.R.S.

### *MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT DECISIONS*

WILLIAM R. GREENDYKE, Bankruptcy Judge.

On August 19, 1998, the United States District Court entered an opinion remanding this case back to this Court in order for me to make further factual findings whether or not equitable tolling is warranted under the applicable provision of the Bankruptcy Code, 11 U.S.C. § 105(a). In accordance with this direction, I once again considered the only evidence presented in this case, the joint stipulations of fact filed by the parties on October 22, 1997, and I make these additional findings of fact in support of my decision to not allow equitable tolling in this case.

### FINDINGS OF FACT

1. The Debtors filed their bankruptcy petition under Chapter 7 of the Bankruptcy Code on November 20, 1996.

2. The Debtors filed this complaint to determine the dischargeability of indebtedness on February 7, 1997.

3. On May 14, 1993, the IRS sent to the Debtors a notice that they owed unpaid income taxes for the taxable year 1992.

4. On May 24, 1993, the IRS assessed income taxes against the Debtors in the amount of $46,629 plus penalties for the underpayment of estimated taxes and for late payment of taxes for the taxable year 1992.

5. For the taxable year 1992, the Debtors reported an adjusted gross income in the amount of $213,547.

6. On June 4, 1993, the IRS sent another notice that the Debtors owed unpaid income taxes for the taxable year 1992.

7. On June 17, 1993, the IRS and the Debtors executed an installment agreement whereby the Debtors agreed to pay their unpaid income tax for 1992 and the IRS agreed not to enforce collection. Although the Debtors do not recall signing such an agreement, and neither the Debtors nor the IRS are able to produce a copy of it, the Debtors do not dispute entering into a payment agreement.

8. On June 18, 1993, the IRS sent the Debtors a reminder notice to make a payment pursuant to their installment agreement.

9. On June 21, 1993, the IRS filed a notice of federal tax lien concerning the Debtors' unpaid income taxes for the taxable year 1992.

10. On July 9, 1993, August 13, 1993, and September 10, 1993, the IRS sent the Debtors notices to make payments pursuant to their installment agreement.

11. On September 25, 1993, after the IRS received two payments under the installment agreement, the IRS closed the Debtors' collection case.

12. On October 15, 1993, November 12, 1993, and December 10, 1993, the IRS sent the Debtors a reminder notice to make payments pursuant to their installment agreement.

13. The Debtors, however, made all the monthly payments pursuant to the agreement until December, 1993, when they failed to make a balloon payment of $279,059.00. On December 10, 1993, the IRS sent the Debtors a notice that they had defaulted on their installment agreement.

14. On February 2, 1994, the Debtors' collection case was placed in "queue" status, after defaulting on their installment agreement.

15. It was not until March 8, 1994 that the IRS assigned the Debtors collection case to a revenue officer.

16. Debtors engaged in a good faith effort to sell their home to satisfy these liabilities. Debtors' home was appraised by a licensed independent appraiser at $525,000 in 1992 and initially listed at that price. The Debtors' plan to use proceeds from the sale of their home was approved in a meeting at the IRS offices between Debtors and Mr. Charles K. Burns, R.O. # 2142. Debtors were subsequently unable to sell their home, and had to drop the asking price numerous times; first to $499,000, then to $449,-000, then to $429,000 and finally to $399,000 between June 1992 and June 1994.

17. In the interim, Debtors met with Mr. Burns and with his successor IRS agent at least once, and each was fully aware of steps being taken to satisfy the outstanding liabilities. The home was listed with Coldwell Banker and Remax and with another realtor, which Debtors cannot recall.

18. Debtors were ultimately forced to file Bankruptcy when First City, Texas n/k/a Texas Commerce Bank refused to renew their Note (after granting several extensions) and threatened foreclosure in the summer of 1994.

19. On June 6, 1994, Kenneth Price filed for bankruptcy under Chapter 11. No collection efforts were made by the IRS in the six months from the default on the installment agreement and the filing of the Chapter 11 petition. I take notice of the contents of the docket in the Chapter 11 case, No. 94–43860. The IRS filed no motions to dismiss or to convert, nor did it otherwise "visibly" participate in the Chapter 11 while it was pending.

20. On June 26, 1994, the IRS closed its collection case on the Debtors for the taxable year 1992.

21. On March 1, 1995, Kenneth Price filed a motion to dismiss his Chapter 11 bankruptcy case based on his inability to get a plan confirmed.

22. On May 4, 1995, the Bankruptcy Court dismissed Kenneth Price's Chapter 11 case.

23. Texas Commerce Bank foreclosed its lien on Debtors' homestead in 1995. Debtors received no monies from the sale.

24. On May 26, 1995, the IRS sent the Debtors a notice to pay their unpaid tax liabilities for the taxable year 1992.

25. It was not until December 4, 1995, approximately 6 months later that the IRS assigned another revenue officer to collect the Debtors' 1992 tax liabilities.

26. Despite the substantial history and time invested in this case by the IRS, it was not until November 19, 1996, approximately 12 months later, that the revenue officer questioned Cay Denise Price.

27. On November 19, 1996, approximately one and one-half years after the dismissal of the Chapter 11 case, the revenue officer served on Cay Price's employer a notice of levy on her wages to collect tax liabilities for the tax year 1992. This was the first attempt by the IRS to levy or take any collection activity subsequent to the dismissal of the Chapter 11 case.

29. On the next day the Debtors filed this Chapter 7 bankruptcy case.

30. Approximately 417 days passed between the date in which the Debtors' 1992 tax return was last due, April 15, 1993, and the date before the filing of Kenneth Price's former Chapter 11 case, June 6, 1994.

31. Approximately 566 days lapsed between the date of dismissal of the Kenneth Price's former Chapter 11 bankruptcy, May 4, 1995, and the date of the filing of this bankruptcy case.

32. Adding these times together approximately two years and 253 days (983 days) passed between the date the 1992 tax return was due and the filing of this case, excluding the intervening time Debtors spent in the former Chapter 11 case. If the time spent in the Chapter 11 were included (334 days), the total would be three years and 222 days (1317 days).

## DISCUSSION

Taking the facts as set out above, I have found NO facts which would support a finding of equitable circumstances to support equitable tolling. The only fact found which would imply any equitable argument in favor of the IRS is the mere filing of the previous Chapter 11 case, which prevented the Service from pursuing its conventional collection efforts for some time. However, this is the exact circumstance which is not by itself sufficient to warrant equitable tolling. *Matter of Quenzer*, 19 F.3d 163 (5th Cir.1993). If I were to deem the mere filing of an intervening bankruptcy case sufficient to warrant equitable tolling, it would be in total disregard of the holding in *Quenzer* which expressly found that equitable considerations are required before a court can use equitable tolling. There must be more facts to support the use of equity in this type of situation.

Unlike in my previous decision, *In re Miller*, 199 B.R. 631 (Bankr.S.D.Tex.1996), in this case, there is no evidence of a "scheme" by the Debtors to bypass the Code's non-dischargeability provisions for tax liabilities. I can find no action by the Debtors which was designed to trick the IRS or circumvent the Code. The IRS has not presented any circumstances or facts which would lead me to find that equity requires a tolling of time. As noted above, the parties filed cross motions for summary judgment. There are no fact issues in dispute. Based on the law and the stipulated facts, the Debtors are entitled to a discharge of the 1992 tax debt unless the IRS comes forward with evidence both raising the issue of equitable tolling and mandating the application of the Court's equitable tolling powers under § 105(a). The IRS failed to meet this burden. Examining the stipulated facts presented, the Court can only conclude that even with the intervening Chapter 11 case, the IRS was not diligent in its collection efforts of the 1992 taxes. Even though the IRS sent numerous reminders to pay, and/or of default, it failed, for whatever reason, to draw its collection efforts to conclusion within a reasonable time. In my opinion, while it is always difficult to articulate

facts to support a negative finding, the facts as presented in the cross motions for summary judgment simply do not support using equitable tolling in order to find the 1992 tax debts non-dischargeable.