In the Matter of: **George Larry HAMRICK and Linda Hester Hamrick, Debtors**

**George Larry Hamrick and Linda Hester Hamrick, Plaintiffs**

v.

**United States of America, acting through the Internal Revenue Service, Defendant**

No. 98–31314 RFH.

United States Bankruptcy Court, M.D. Georgia, Athens Division.

Nov. 14, 2000.

---

Anne M. Bernstein, Athens, for Plaintiffs.

Janice Rovner Feldman, Tax Division, U.S. Department of Justice, Washington, D.C., Bernard Snell, Macon, for Defendant.

### MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

George Larry Hamrick and Linda Hester Hamrick, Plaintiffs, filed on January 19, 1999, a Complaint for Determination of Dischargeability of Debt. Plaintiffs filed on January 28, 1999, an amendment to their complaint. The United States of America, acting through the Internal Revenue Service, Defendant, filed its response on March 24, 1999. Defendant filed on June 22, 2000, an amendment to its response. A trial was held on June 23, 2000.[1] The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

### FINDINGS OF FACT

Plaintiffs have failed to pay in full their federal income tax obligations since the 1970s. Mrs. Hamrick testified that she did not remember how Plaintiffs' tax problems began. Plaintiffs sold their residence in Atlanta, Georgia, around 1980. Plaintiffs used the proceeds from the sale, some $120,000, to satisfy in full their delinquent tax obligations. Plaintiffs also sold Dr. Hamrick's dental practice in Atlanta.

Plaintiffs moved to Newton County, Georgia. They purchased a farm house and forty acres of realty ("the residence"). Plaintiffs lived in Newton County for some ten years. The economy in the area was very depressed, and Dr. Hamrick's dental practice in Newton County was not successful. Plaintiffs used the proceeds from the sale of Dr. Hamrick's dental practice in Atlanta to meet their living expenses.

Plaintiffs failed to pay their tax obligations in 1981, 1983, 1988, 1989, 1990, and 1991. Mrs. Hamrick testified that after moving to Newton County, Plaintiffs relied on an accountant friend to timely file their tax returns. Plaintiffs' friend, however, thought that Plaintiffs were timely filing their own returns. Mrs. Hamrick testified that Plaintiffs filed tax returns for several years "all at once." Defendant attempted to collect Plaintiffs' tax obligations. Mrs. Hamrick testified that she strongly resisted seeking bankruptcy relief until she was convinced that Plaintiffs had no other alternative.

Plaintiffs filed a petition under Chapter 7 of the Bankruptcy Code on March 20,

---

1. Plaintiffs and Defendant filed a Joint Stipulation of Facts on June 23, 2000.

1991. The Bankruptcy Court for the Northern District of Georgia granted Plaintiffs a discharge on July 10, 1991. Plaintiffs' efforts to sell their residence in Newton County were not successful. A creditor foreclosed on Plaintiffs' residence in 1991.[2]

Plaintiffs moved to Athens, Georgia. Dr. Hamrick worked as an independent contractor for a group dental practice.

Plaintiffs testified that during a period of about five years, they attempted to negotiate with Defendant a compromise of their delinquent tax obligations. The negotiations occurred at times between 1991 and 1995. Plaintiffs and Defendant entered into an Installment Agreement dated February 3, 1995. Plaintiffs were to make monthly payments of $600 toward their tax obligations for 1981 and 1983, which totaled $103,424.44. Plaintiffs made thirteen monthly payments on the Installment Agreement.[3]

Plaintiffs made Offer[s]–In–Compromise on May 25, 1995, and September 13, 1995. Mrs. Hamrick testified that under the offers, Plaintiffs were to pay $33,000 in a lump sum to satisfy their tax obligations. Defendant rejected Plaintiffs' Offer[s]–In–Compromise on February 16, 1996, and April 23, 1996. Defendant's representative testified that Defendant would not accept an Offer–In–Compromise unless the taxpayer was current on his tax obligations for the current year. Defendant's representative noted that Plaintiffs had a history of failing to pay their taxes. Mrs. Hamrick testified that she believed that Defendant was "stringing along" Plaintiffs, which resulted in additional interest and penalties being added to their tax obligations.

Defendant sent a notice dated June 4, 1996, to Plaintiffs, advising that Defendant was canceling the Installment Agreement dated February 3, 1995. The notice provided, in part, as follows:

### DEFAULTED INSTALLMENT AGREEMENT–NOTICE OF INTENT TO LEVY

Re: Installment Agreement dated 2–3–95

Our agreement with you says that we may withdraw your installment agreement and collect the entire amount of your tax liability "if our information shows that your ability to pay has changed significantly."

To prevent this action, within 30 days from the date of this letter your must:

. . . .

x  pay your taxes, shown on the second page of this letter in full.

. . . .

[The notice provided that Plaintiffs' tax obligations, including penalties and interest, totaled $182,559.88]

Note for clarification: The Internal Revenue Service is canceling your Installment Agreement dated 2–3–95. It has been determined through information submitted with your proposed Offer in Compromise that monthly payments of $2168.00/per month can be made. Therefore, it is our intent to increase/revise the Installment Agreement reflecting the new monthly amount. This can be accomplished by initiating a new Installment Agreement for the $2168/mo beginning July 1996.

Plaintiffs sought bankruptcy relief a second time by filing a petition under Chapter 13 of the Bankruptcy Code on June 21, 1996. Plaintiffs listed only three creditors on their bankruptcy schedules.[4] Plaintiffs testified that they made their Chapter 13 plan payments. Plaintiffs testified that they did not remember why their Chapter 13 case was dismissed on April 22, 1997.

---

2.  Mrs. Hamrick testified that the foreclosure occurred about the same time as their bankruptcy filing.

3.  *See* Defendant's Exhibit No. 10, p. 2–3.

4.  Plaintiffs listed obligations owed to Defendant ($239,000), the Georgia Department of Revenue ($16,501), and Discover Card ($4,000).

Defendant issued on August 4, 1997, a Notice of Levy on Wages, Salary, and Other Income ("wage levy"). The wage levy was sent to Dr. Hamrick's employer. The wage levy asserted that Plaintiffs owed $284,318.18 in taxes, penalties, and interest from 1981 through 1995. Mrs. Hamrick testified that a wage levy for over $300,000 was sent to her employer. Mrs. Hamrick testified that her annual salary at that time was $36,000.

Plaintiffs, in response to the wage levies, sought bankruptcy relief a third time by filing a petition under Chapter 13 of the Bankruptcy Code on August 14, 1997. Plaintiffs listed only four creditors in their bankruptcy schedules.[5] Plaintiffs testified that they made their Chapter 13 plan payments. Plaintiffs testified that they did not remember why their Chapter 13 case was dismissed on June 29, 1998.

Defendant sent on September 22, 1998, a wage levy to Mrs. Hamrick's employer. The wage levy asserted that Plaintiffs owed $345,826.81 in taxes, interest, and penalties from 1981 through 1995.

Plaintiffs, in response to the wage levy, sought bankruptcy relief a fourth time by filing a petition under Chapter 7 of the Bankruptcy Code on October 8, 1998.[6]

Defendant concedes that Plaintiffs' tax obligations for 1991 and prior years are dischargeable in bankruptcy.[7] These obligations, including penalties and interest, total $230,395.23.[8]

Plaintiffs concede that their tax obligations for 1995, 1996, and 1998 are nondischargeable.[9] These obligations, including penalties and interest, total $77,453.78. Mrs. Hamrick testified that Plaintiffs will be able to pay these obligations and will also be able to pay their current tax obligations.

Plaintiffs had not filed their 1999 tax return at the time of trial.[10] Plaintiffs made withholding and quarterly payments on their 1999 tax obligations.

Plaintiffs and Defendant dispute the dischargeability of Plaintiffs' tax obligations for 1992, 1993, and 1994. Plaintiffs' obligations for those years, as of June 20, 2000, were as follows:

| Tax Year | Assessed Tax,[11] Penalties, and Interest | + | Accrued Penalties and Interest | = | Total |
|---|---|---|---|---|---|
| 1992 | $17,690.90 | | $17,070.54 | | $34,761.44 |
| 1993 | 9,310.95 | | 7,807.60 | | 17,118.55 |
| 1994 | 25,104.12 | | 16,676.59 | | 41,780.71 |
| | $52,105.97 | | $41,554.73 | | $93,660.70 |

The due dates, including extensions, for Plaintiffs' tax returns were as follows: (1) 1992—August 15, 1993; (2) 1993—April 15, 1994; and (3) 1994—August 15, 1995.

Defendant concedes that Plaintiffs did not act in bad faith or attempt to evade Defendant's collection actions. Plaintiffs filed their tax returns for all years from 1981 through 1998.[12] Mrs. Hamrick testified that Plaintiffs' tax returns were accurate and that Defendant never contended that their tax returns were fraudulent. Defendant used Plaintiffs' tax returns to determine the amount of Plaintiffs' tax obligations. Simply stated, Plaintiffs filed accurate tax returns, but failed to pay some of their tax obligations.

Dr. Hamrick is sixty-one years old. He has been a dentist for thirty-six years.

---

5.  Plaintiffs listed obligations owed to Defendant ($315,273), the Georgia Department of Revenue ($23,243), Discover Card ($4,000), and Birchmore, Inc. ($1,500).

6.  Plaintiffs listed the same creditors and obligations on the schedules in their 1997 and 1998 bankruptcy cases.

7.  *See* Defendant's *Trial Memorandum,* p. 7 (filed June 21, 2000).

8.  *See* Defendant's Exhibit No. 14.

9.  Plaintiffs do not owe any tax obligations for 1997.

10.  Plaintiffs received an extension until August 15, 2000, in order to file their 1999 tax return.

11.  *See* Defendant's Exhibit No. 14. The evidence presented does not list separately the amount of the underlying tax obligations.

12.  Some tax returns were filed late.

Dr. Hamrick opened a solo dental practice in August of 1999.[13] Dr. Hamrick has a number of health problems, including diabetes and high blood pressure. Dr. Hamrick testified that his medication causes blurred vision, hearing loss, and lethargy.[14]

Plaintiffs' children are twenty-three and twenty-five years old. Mrs. Hamrick sometimes worked part time while raising Plaintiffs' children. Mrs. Hamrick began full-time employment in September of 1997. Her current annual salary is $60,000.

Mrs. Hamrick testified that each of Plaintiffs' bankruptcies were filed in response to Defendant's collection actions. Mrs. Hamrick testified that Plaintiffs' tax obligations for 1992, 1993, and 1994 should be dischargeable for the following reasons: (1) Mrs. Hamrick believes that Plaintiffs tried their best, and in good faith, to reach an offer and compromise to deal with their tax obligations; (2) Mrs. Hamrick believes that Defendant was stringing Plaintiffs along for several years during the negotiations; and (3) Mrs. Hamrick believes that most of Plaintiffs' tax obligations for 1992, 1993, and 1994 are for interest and penalties that would not have accrued except for Defendant's actions during the negotiations.

DUE DATES, INCLUDING EXTENSIONS, FOR PLAINTIFFS' TAX RETURNS

| Tax Year | Return Due | Number of Days Until Second Bankruptcy Case Filed on June 21, 1996 |
|---|---|---|
| 1992 | 8–15–1993 | 1,041 |
| 1993 | 4–15–1994 | 798 |
| 1994 | 8–15–1995 | 311 |

ADDITIONAL TIME THAT DEFENDANT HAD TO COLLECT FROM PLAINTIFFS

| Bankruptcy Case | Petition Date | Date Case Dismissed | Number of Days Defendant Had to Collect Before Plaintiffs Filed Their Next Bankruptcy Petition |
|---|---|---|---|
| Chapter 13 | 6–21–1996 | 4–22–1997 | 114 |
| Chapter 13 | 8–14–1997 | 6–29–1998 | 101 |
| Chapter 7 | 10–8–1998 | Case is Active | NA |
| | | Total | 215 |

13. Dr. Hamrick was an independent contractor in a group dental practice for several years prior to August of 1999.

14. Lethargy means abnormal drowsiness. Webster's Third New International Dictionary 1298 (1986).

Thus, Defendant had a total of 1,256 days (i.e. 1,041 days plus 215 days) to collect Plaintiffs' 1992 tax obligations prior to the filing of Plaintiffs' current Chapter 7 bankruptcy petition. Defendant had a total of 1,013 days (i.e. 798 days plus 215 days) to collect Plaintiffs' 1993 tax obligations. Defendant had a total of 526 days (i.e. 311 days plus 215 days) to collect Plaintiffs' 1994 tax obligations.

## CONCLUSIONS OF LAW

Plaintiffs contend that their obligations for taxes, interest, and penalties for 1992, 1993, and 1994 are dischargeable in bankruptcy. Section 523(a)(1)(A) and (7) of the Bankruptcy Code[15] provides as follows:

### § 523. Exceptions to discharge

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

(A) of the kind and for the periods specified in section 507(a)(2) or 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed;

. . . .

(7) to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty-

(A) relating to a tax of a kind not specified in paragraph (1) of this subsection; or

(B) imposed with respect to a transaction or event that occurred be-

15. 11 U.S.C.A. § 523(a)(1)(A), (7) (West 1993 & Supp.2000).

fore three years before the date of the filing of the petition;

11 U.S.C.A. § 523(a)(1)(A), (7) (West 1993 & Supp.2000).

Section 507(a)(8)(A)(i) and (G) of the Bankruptcy Code [16] provides as follows:

**§ 507. Priorities**

(a) The following expenses and claims have priority in the following order:

. . . .

(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for—

(A) a tax on or measured by income or gross receipts—

(i) for a taxable year ending on or before the date of the filing of the petition for which a return, if required, is last due, including extensions, after three years before the date of the filing of the petition;

. . . .

. . . .

(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss.

11 U.S.C.A. § 507(a)(8)(A)(i), (G) (West Supp.2000).

In *Wood v. United States (In re Wood),* [17] the Eleventh Circuit Court of Appeals stated:

Sections 523(a)(1) and 507(a)[8](A) reflect a two-fold government interest. First, the Government has an interest in decreasing the number of delinquent income tax filers, and the sections encourage a prompt investigation of such filers. Presumably, the vigorous pursuit of delinquent filers, combined with substantial civil and criminal penalties, discourages the late filing of returns. Second, and perhaps more importantly, the Government has an interest in maximizing the period allowed for auditing returns and collecting taxes. In establishing the

priority and discharge provisions of the Code, Congress recognized the IRS' status as an involuntary creditor and need to have a reasonable period of time within which to collect taxes. The three-year time period embodied in section 507(a)[8](A) reflects the "reasonable" period of time the IRS is allotted to audit the return and collect taxes.

866 F.2d at 1371.

Under section 523(a)(1), a claim for income taxes is entitled to priority and is nondischargeable if the due date, including extensions, of the tax return is less than three years prior to the date of the bankruptcy filing.

■ Prepetition interest is nondischargeable if the underlying tax is nondischargeable. Prepetition interest is entitled to the same priority as the underlying tax. *Bates v. United States (In re Bates),* 974 F.2d 1234, 1237 (10th Cir.1992); *Jones v. United States (In re Garcia),* 955 F.2d 16 (5th Cir.1992); *In re Larson,* 862 F.2d 112, 119 (7th Cir.1988).

"A tax penalty is discharged if the tax to which it relates is discharged (in the precise terms of the statute, not nondischargeable) or if the transaction or event giving rise to the penalty occurred more than three years prior to the filing of the bankruptcy petition." *Burns v. United States (In re Burns),* 887 F.2d 1541, 1544 (11th Cir.1989).

■ The "transaction or event" is the due date of the tax return. *Stoll v. Internal Revenue Service (In re Stoll),* 132 B.R. 782, 786–87 (Bankr.N.D.Ga.1990).

■ Plaintiffs filed their current Chapter 7 bankruptcy petition on October 8, 1998. Plaintiffs' bankruptcy petition was filed more than three years after the due dates for their tax returns for 1992, 1993, and 1994. Plaintiffs filed two Chapter 13 bankruptcy cases during the three-year

---

**16.** 11 U.S.C.A. § 507(a)(8)(A)(i), (G) (West Supp.2000).

**17.** 866 F.2d 1367 (11th Cir.1989).

period. Defendant contends the three-year priority period of section 523(a)(1) should be tolled during the pendency of Plaintiffs' prior Chapter 13 bankruptcy cases. The Eleventh Circuit has held that the three-year priority period may be tolled, where appropriate.

In *Morgan v. United States (In re Morgan),*[18] the Eleventh Circuit stated:

As a result, we conclude that 11 U.S.C. § 105(a) is broad enough to permit a bankruptcy court, exercising its equitable powers, to toll the three-year priority period, where appropriate, during the pendency of a debtor's prior bankruptcy proceeding.

"Interpreting [the Bankruptcy Code] literally would allow a debtor to create an 'impenetrable refuge' by filing a bankruptcy petition, waiting for [§ 507(a)(8)'s] priority periods to expire, and then dismissing the case and refiling shortly thereafter." *In re West,* 5 F.3d 423, 426 (9th Cir.1993) (citing *In re Florence,* 115 B.R. 109, 111 (Bankr.S.D.Ohio 1990)). Due to congressional intent, which favors allowing the government sufficient time to collect taxes, and the fear that taxpayers may abuse the bankruptcy process in order to avoid paying taxes, we hold that the equities will generally favor the government in cases such as this. *See In re Waugh,* 109 F.3d at 492 ("Congress realized that '[a]n open-ended dischargeability policy would provide an opportunity for tax evasion through bankruptcy, by permitting discharge of tax debts before a taxing authority has an opportunity to collect any taxes due.'") (quoting H.R.Rep. No. 95–595, at 190 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6150). There may be factual scenarios, however, in which the equities favor the taxpayer.

182 F.3d at 779–80.

The circuit court also stated:

8. While the record has not been developed fully, there does not appear to be any evidence of dilatory conduct or bad faith on the part of the Morgans. We do not set forth the equitable considerations regarding § 105(a), but we reject the notion espoused in *In re Gore,* 182 B.R. 293, 316 (Bankr.S.D.Ala.1995) that a finding of dilatory conduct or bad faith is necessary to find the equities in favor of the government.

Furthermore, we do not address the question of whether there may be a difference between the actual tax liability, penalties or interest for the purpose of considering the equities.

182 F.3d at 780 n. 8.

In *Bair v. United States (In re Bair),*[19] the Bankruptcy Court for the Western District of Texas stated:

A review of cases addressing the dischargeability of tax debts reveals several factors that have influenced courts to exercise the equitable tolling authority pursuant to section 105(a). First and foremost, the filing of successive bankruptcy petitions prevented the IRS from collecting the taxes within the limitations periods. *Richards,* 994 F.2d at 766 (Chapter 13 dismissal followed by second Chapter 13 filing); *Ramos,* 208 B.R. at 657 (Chapter 13 dismissal followed by second Chapter 13 filing); *Miller,* 199 B.R. at 632–34 (Chapter 13 dismissal followed by a Chapter 7 filing); *Clark,* 184 B.R. at 730 (five separate filings under Chapter 7 or 13). Between bankruptcies during which no automatic stay remained in effect, the IRS commenced regular collection procedures. *Moss,* 216 B.R. at 558; *Clark,* 184 B.R. at 731. Often, the debtor's filing of a bankruptcy petition followed shortly after the IRS commenced collection efforts. *Miller,* 199 B.R. at 634 (fifteen days after issuance of notice of intent to levy); *Clark,* 184 B.R. at 731 (four out of five bankruptcies filed shortly after receipt of

---

**18.** 182 F.3d 775 (11th Cir.1999).

**19.** 240 B.R. 247 (Bankr.W.D.Tex.1999).

IRS collection notice or after IRS officer had case). Other practices viewed to warrant equitable tolling involved the debtor's lack of responsibility regarding tax obligations or failure to make payments to the IRS during prior bankruptcies even while employed. *Miller,* 199 B.R. at 634; *Clark,* 184 B.R. at 731–32. Of course, neither should the IRS exhibit inequitable conduct. *See Gilmore,* 226 B.R. at 577 (denying equitable tolling where IRS acted arrogantly by assuming that tolling would apply and hounded debtor with collection efforts for previously discharged taxes).

240 B.R. at 252.

*See also Price v. United States (In re Price),* 244 B.R. 398 (Bankr.S.D.Tex.1998) (evidence of a scheme by the debtor to bypass the Bankruptcy Code's nondischargeability provisions, actions by the debtor to trick the IRS, diligence of IRS's collection efforts).

Plaintiffs urge the Court not to apply equitable tolling to the three-year priority period. Plaintiffs argue that the bankruptcy court's equitable powers are quite limited and must only be exercised within the confines of the Bankruptcy Code. Plaintiffs argue that the plain language of the Bankruptcy Code does not provide for equitable tolling of the priority period. Plaintiffs essentially argue that the decision of the Eleventh Circuit in *In re Morgan* was erroneous. *See* Debtors' Trial Memorandum of Law (filed June 23, 2000); Debtors' Supplemental Memorandum of Law (filed July 20, 2000).

This Court is bound by *In re Morgan* and will apply that case law to the evidence presented.

Turning to the case at bar, Plaintiffs have filed accurate tax returns since 1981. Plaintiffs failed to pay in full their taxes for twelve of those years. Each of Plaintiffs' bankruptcy filings was a response to Defendant's collection actions. Plaintiffs made their Chapter 13 plan payments until their Chapter 13 cases were dismissed. In their bankruptcy schedules, Plaintiffs listed only three or four creditors. Apparently, Plaintiffs have been able to keep their other obligations current. Plaintiffs have not acted in bad faith in their dealings with Defendant. Plaintiffs have attempted to compromise or pay in installments their tax obligations. Most of their obligations represent interest and penalties rather than the underlying tax. Plaintiffs have obtained substantial relief by having their tax obligations for 1991 and prior years discharged. Plaintiffs owe $77,453.78 for their 1995, 1996, and 1998 tax obligations, which are nondischargeable.

Defendant had a total of 1,256 days (3.44 years) to collect Plaintiffs' 1992 tax obligations. Thus, even if the Court tolls the three-year priority period, Plaintiffs' 1992 taxes would be outside of the three-year priority period. Defendant urges the Court, however, to extend the three-year priority period for an additional six months under 26 U.S.C.A. § 6503(b) and (h).[20] Defendant contends that several courts, relying solely on section 105, have extended the three-year priority period an addi-

---

**20.** 26 U.S.C.A. § 6503(b), (h) (West Supp. 2000). This section provides as follows:

**§ 6503. Suspension of running of period of limitation**

. . . .

  **(b) Assets of taxpayer in control or custody of court.**—The period of limitations on collection after assessment prescribed in section 6502 shall be suspended for the period the assets of the taxpayer are in the control or custody of the court in any proceeding before any court of the United States or of any State or of the District of Columbia, and for 6 months thereafter.

  . . . .

  **(h) Cases under title 11 of the United States Code.**—The running of the period of limitations provided in section 6501 or 6502 on the making of assessments or collection shall, in a case under title 11 of the United States Code, be suspended for the period during which the Secretary is prohibited by reason of such case from making the assessment or from collecting and—

  (1) for assessment, 60 days thereafter, and

  (2) for collection, 6 months thereafter.

26 U.S.C.A. § 6503(b), (h) (West Supp.2000).

tional six months. Defendant relies on *Miller v. Internal Revenue Service (In re Miller)*, 199 B.R. 631, 634 (Bankr.S.D.Tex. 1996); *Clark v. Internal Revenue Service (In re Clark)*, 184 B.R. 728 (Bankr. N.D.Tex.1995); *Ramos v. Internal Revenue Service (In re Ramos)*, 208 B.R. 655 (W.D.Tex.1996), and *Hollowell v. Internal Revenue Service (In re Hollowell)*, 222 B.R. 790 (Bankr.N.D.Miss.1998) (two-year limitations period set forth at 11 U.S.C.A. § 523(a)(1)(B)(ii) was tolled under section 105 during the pendency of prior bankruptcy and for six months thereafter). *Compare McMillan v. United States (In re McMillan)*, 204 B.R. 835 (Bankr. M.D.Ga.1996) (Laney, J.) (relying on 11 U.S.C.A. § 108(c), priority period was extended an additional six months).[21]

In *In re Avila*,[22] the Bankruptcy Court for Massachusetts held that the three-year priority period was tolled during the debtor's prior bankruptcy, but not for an additional six months after termination of the automatic stay. The bankruptcy court stated, in part:

For several reasons, I disagree with *West* and find no cause for expanding the three-year period in § 507(a)(8)(A)(i) by an additional six months. Most importantly, the plain language of § 108(c) and § 6503(h) specifies that they do not apply to § 507(a)(8)(A)(i). To conclude that § 108(c) makes § 6503(h)(2) applicable to the three-year period in § 507(a)(8)(A)(i), one must surmount not one but three indications to the contrary in the language of these three sections. First, section 108(c) expressly provides that it applies to periods fixed by "*non* bankruptcy law" (emphasis added). The three-year period in § 507(a)(8)(A)(i), being a period fixed by the Bankruptcy Code, is thus expressly excluded from the scope of § 108(c). Second, § 108(c) applies only to "a period for commencing or continuing a civil action," not to a

period for assessing or collecting a tax (the subject of § 6503(h)(2)), and not to a period defining the priority and dischargeability of a tax claim (the subject of § 507(a)(8)(A)(i)). And third, § 6503(h) expressly provides that it applies to "the period of limitations provided in [Internal Revenue Code] section 6501 or 6502 on the making of assessments or collection." It does not mention § 507(a)(8)(A)(i) or any other provision by which the Bankruptcy Code specifies the priority or dischargeability of taxes. In short, the plain language of both § 108(c) and § 6503(h) not only states that they apply to statutes and matters other than § 507(a)(8)(A)(i); it also gives affirmative cause to conclude that they were *not* intended to apply to § 507(a)(8)(A)(i).

228 B.R. at 68.

■ This Court agrees with the reasoning of *In re Avila* and is persuaded that Plaintiffs' obligations for taxes, penalties, and interest for 1992 are dischargeable. Plaintiffs filed an accurate tax return for 1992. Plaintiffs did not act in bad faith. The Court is persuaded that Defendant had a reasonable period of time in which to collect the 1992 tax obligations.

■ The Court is persuaded that Plaintiffs' obligations for taxes, interest, and penalties for 1993 and 1994 are nondischargeable. In *In re Morgan*, the Eleventh Circuit Court of Appeals stated: "Due to congressional intent, which favors allowing the government sufficient time to collect taxes, and the fear that taxpayers may abuse the bankruptcy process in order to avoid paying taxes, we hold that the equities will generally favor the government in cases such as this." 182 F.3d at 779–80. Defendant had 798 days (2.19 years) and 311 days (0.85 years) respectively to collect these tax obligations before Plaintiffs filed for bankruptcy protection on June 21, 1996. Defendant had a

---

**21.** In *In re Morgan,* the Eleventh Circuit held that section 108(c) was insufficient to toll the three-year priority period. 182 F.3d at 779.

**22.** 228 B.R. 63 (Bankr.D.Mass.1999).

total of 215 days (0.59 years) to collect these tax obligations following the termination of Plaintiffs' 1996 bankruptcy case. The Court notes that Defendant's collection actions were stayed three times by Plaintiffs' bankruptcy filings.

As noted in *In re Morgan,* the equities generally favor the government. Plaintiffs have not demonstrated through their evidence facts sufficient to show that the equities favor them. Plaintiffs have not met their burden of proof.

Plaintiffs argue that the penalties for 1993 and 1994 tax years should be dischargeable even if the underlying tax obligations are not dischargeable. In *In re Morgan,* the Eleventh Circuit left open the question of whether there may be a difference between the underlying tax and the penalties for the purpose of equitable tolling. 182 F.3d at 780 n. 8.

The Court is persuaded that, in the case at bar, the penalties for 1993 and 1994 should be nondischargeable. The Court is persuaded that Defendant did not have a reasonable period of time to collect these penalties, and Plaintiffs have not shown that the equities favor them.

Plaintiffs argue that section 523(b) of the Bankruptcy Code[23] requires that the three-year priority period be calculated by using the filing date of their most recent bankruptcy petition. Under section 523(b), tax obligations that were nondischargeable in a prior bankruptcy case may be dischargeable in a subsequent bankruptcy case. The dischargeability of the tax obligations in the second bankruptcy

case will depend upon whether they fall within any applicable exceptions of section 523(a). 4 *Collier on Bankruptcy* ¶ 523.25 (15th ed. rev.2000).

In the case at bar, Plaintiffs' tax obligations for 1993, 1994, 1995, 1996, and 1998 are nondischargeable because the three-year priority period had not expired when Plaintiffs' current bankruptcy petition was filed.[24] The Court is not persuaded that section 523(b) makes these obligations dischargeable.

Finally, Plaintiffs argue that equitable tolling is inconsistent with section 349(a) of the Bankruptcy Code,[25] which provides, in part, that dismissal of a case does not prejudice the debtor with regard to the filing of a subsequent bankruptcy petition, except as provided in section 109(g) of the Bankruptcy Code.[26]

The Court is not persuaded by Plaintiffs' argument because the Court's decision is made by applying the applicable law to Plaintiffs' presently pending bankruptcy case. Plaintiff's prior filings have in no way prejudiced their rights in the pending case.

---

**23.** 11 U.S.C.A. § 523(b) (West Supp.2000). This section provides as follows:

**§ 523. Exceptions to discharge**

. . . .

(b) Notwithstanding subsection (a) of this section, a debt that was excepted from discharge under subsection (a)(1), (a)(3), or (a)(8) of this section, under section 17a(1), 17a(3), or 17a(5) of the Bankruptcy Act, under section 439A of the Higher Education Act of 1965, or under section 733(g) of the Public Health Service Act in a prior case concerning the debtor under this title,

or under the Bankruptcy Act, is dischargeable in a case under this title unless, by the terms of subsection (a) of this section, such debt is not dischargeable in the case under this title.

11 U.S.C.A. § 523(b) (West Supp.2000).

**24.** Equitable tolling being applicable to years 1993 and 1994.

**25.** 11 U.S.C.A. § 349(a) (West Supp.2000).

**26.** 11 U.S.C.A. § 109(g) (West 1993).